[No. 5128. Decided April 4, 1905.]

JAMES GOUDY, *Appellant*, v. EDWARD MEATH, *Assessor of Pierce County, Respondent.*[1]

INDIANS—TREATIES—RESTRICTIONS AGAINST ALIENATION—RE- MOVAL—STATUTES—CONSTRUCTION—TAXATION OF INDIAN LANDS. The treaty restrictions against the taxation of the lands of the Puyallup Indians were removed by Laws 1889-90, p. 499, providing that the Indians may voluntarily alienate their lands and remov- ing all restrictions "in reference thereto" (thereby referring to the lands and not merely to the voluntary alienation), and by Act of Congress, 27 Stat. 612, which was at least a consent to the terms of the act of the legislature after the expiration of ten years from March 3, 1893.

SAME—STATUTES—TITLE—SUFFICIENCY. An act entitled "An act enabling the Indians to sell and alien" their lands, theretofore restricted by treaty, is sufficient to embrace a provision removing the other treaty restrictions against taxation and forced sales, since the latter were restrictions against alienation and were merely included as necessary to carry out the object of the treaty that the Indian should not dispose of his land for a certain time.

Appeal from a judgment of the superior court for Pierce county, Snell, J., entered April 2, 1904, upon an agreed statement of facts, dismissing an action to enjoin the as- sessment for taxation of Indian lands. Affirmed.

[1]Reported in 80 Pac. 295.

*George T. Reid*, for appellant, cited: *Wau-pe-man-qua v. Aldrich*, 28 Fed. 489; *Blue Jacket v. Board of Com'rs*, 5 Wall. 737, 18 L. Ed. 667; *United States v. Rickert*, 188 U. S. 432, 23 Sup. Ct. 478, 47 L. Ed. 532; *Frazee v. Spokane County*, 29 Wash. 278, 69 Pac. 779.

*F. Campbell*, for respondent.

MOUNT, C. J.—Appellant brought this action to restrain the officers of Pierce county from assessing his lands for taxation. The only question in the case is whether or not appellant's lands are taxable by the state. The lower court found that they were taxable, and entered a judgment dismissing the action, and plaintiff appeals.

The facts are submitted upon an agreed statement, from which it appears, that the appellant is an Indian, and was formerly a member of the Puyallup tribe; that he came by his lands under the provisions of the treaty of December 26, 1854, between the United States and the Puyallup and other tribes of Indians; that he lives upon and cultivates said lands, and holds them in severalty; that he has entirely severed his tribal relations, and is a citizen of the United States, with all the privileges and immunities of any other citizen; that the patent, dated January 30, 1886, from the United States for these lands, to appellant, contained the following provision:

"Now, know ye, that the United States of America, in consideration of the premises and in accordance with the directions of the President of the United States under the aforesaid sixth article of the treaty of the 16th day of March, Anno Domini, 1854, with the Omaha Indians, has given and granted, and by these presents does give and grant, unto the said James Goudy, as the head of the family as aforesaid, and to his heirs, the tracts of land above described, but with the stipulation contained in the said sixth article of the treaty with the Omaha Indians,

that the said tracts shall not be alienated or leased for a longer term than two years and shall be exempt from levy, sale, or forfeiture, which conditions shall continue in force until a state constitution embracing such lands within its boundaries shall have been formed and the legislature of the state shall remove the restrictions, and no state legislature shall remove the restrictions without the consent of Congress. . . ." [for other provisions of the deed and of the article of the treaty therein referred to, see *Bird v. Winyer,* 24 Wash. 269, 64 Pac. 178];

that a state constitution embracing such lands within its boundaries was adopted on November 11, 1889; that the legislature of the state passed an act, approved March 22, 1890, the title and first section of which are as follows:

"An act enabling the Indians to sell and alien the lands of the Puyallup Indian Reservation, in the state of Washington.

"§ 1.    That the said Indians who now hold, or who may hereafter hold, any of the lands of any reservation, in severalty, located in this state by virtue of treaties made between them and the United States, shall have power to lease, incumber, grant, and alien the same in like manner and with like effect as any other person may do under the laws of the United States and of this state, and all restrictions in reference thereto are hereby removed" (Laws of 1889-90, p. 499);

that on March 3, 1893, Congress passed an act relating to the Puyallup Indian reservation, which act provided among other things, "that the Indian allottees shall not have the power of alienation of the allotted lands  .  .  . for a period of ten years from the date of the passage of this act" (27 Stat. 612, c. 209); that in March, 1899, the legislature of this state passed "an act relating to the sale of allotted lands by Indians," which provided that any Indian who owns within this state any land or real estate allotted to him by the government may sell and convey by deed the fee thereof, "it being the intention of

this act to remove from Indians residing in this state all existing disabilities relating to alienation of their real estate" (Laws of 1899, p. 155); that the secretary of the interior, in February, 1903, construed the Indian appropriations act of Congress of March 3, 1893, *supra,* and the act of the legislature of this state of March 22, 1890, *supra,* as removing all restrictions upon the alienation and sale of lands allotted to the Puyallup Indians after the expiration of the ten-year period, and that said department of the government has ever since acted upon such construction.

Appellant contends that the lands in question are not subject to taxation, because the restrictions against "levy, sale, and forfeiture" have not been removed. It is conceded that the Indians may now sell their lands voluntarily, and convey a title in fee, and that thereupon the lands so sold are subject to taxation in the hands of parties not Indians, and he contends that the exemption is not to the land but to the Indian.

So that the real question in the case is, have the restrictions that the land "shall be exempt from levy, sale, or forfeiture" been removed? These words do not directly exempt the land from taxation, but they were held sufficient for that purpose by the United States supreme court in the case of *The Kansas Indians,* reported in 5 Wall. 737, 18 L. Ed. 667, where a similar provision was considered. Congress certainly has the power to exempt these lands from taxation, but, where the Indian has severed his tribal relations, and there is no exemption by act of Congress, the state reserves the right to tax them. Art. 26, State Const., 2 Bal. Code, p. 2125. There can be no doubt that, under the provisions of the patent, which conforms to the provisions of the treaty above referred to, Congress may remove these restrictions whenever it

9-38 WASH.

sees fit, or the legislature of the state may do so with the consent of Congress. We are of the opinion that the provisions of the act of Congress of March 3, 1893, c. 209, 27 Stat. 633, wherein it says, "And provided. further, that the Indian allottees shall not have power of alienation of the allotted lands not selected for sale by said commission for a period of ten years from the date of the passage of this act," were, by necessary implication, a removal of all restrictions upon alienation after the ten-year period has expired. This alienation included both voluntary and involuntary alienation. The object of the provisions for involuntary alienation by levy, sale, or forfeiture was to prevent alienation by indirection where it was prohibited directly or voluntarily. As was said in *The Kansas Indians* case, *supra*:

"The object of the treaty was to hedge the lands around with guards and restrictions, so as to preserve them for the permanent homes of the Indians. In order to accomplish this object, they must be relieved from every species of levy, sale, and forfeiture—from levy and sale for taxes, as well as the ordinary judicial levy and sale."

When these Indians were given the power of alienation by Congress, with no limitations thereon, there was no longer necessity for a restriction as to forced sales. Unlimited power of alienation necessarily carried with it the burden of forced sale. But if the act of Congress of March 3, 1893, cannot be construed as of itself removing all of the restrictions upon the alienation contained in the treaty and in the patent above named, it certainly amounted to a consent by Congress to the terms of the act of the state legislature of March 22, 1890, after the ten-year period had expired.

But it is contended that this act is insufficient to remove the restrictions against levy, sale, and forfeiture, because

the act provides "that the said Indians . . . shall
have power to lease, incumber, grant and alien the same
in like manner and with like effect as any other person
may do under the laws of the United States and of this
state, and all restrictions in reference thereto are hereby
removed." It is ·argued that the words "in reference
thereto" refer to leasing, incumbering, granting and alien-
ating. While the word "thereto" may reasonably be held
to refer to leasing, etc., we think it is apparent that this
word refers to the *land,* and was intended to mean the
same as though the sentence had read "all restrictions in
reference to the land are hereby removed."

Appellant further contends that the title of the act of
1890 is not sufficient, if the act be construed to make
the lands subject to levy, sale and forfeiture. The
title is, "An act enabling the Indians to sell and alien the
lands of the Puyallup Indian Reservation, in the state of
Washington." As we have attempted to show above, the
restrictions named in the treaty and in the patent were
upon the alienation of the land. Congress intended that
the Indian should not dispose of his lands until a certain
time. In order to accomplish this object, it was neces-
sary to provide against involuntary as well as voluntary
sale, which was done in these words: "The said tracts shall
not be alienated or leased for a longer term than two years,
and shall be exempt from levy, sale or forfeiture, which
conditions shall continue" until the restrictions are re-
moved. These restrictions are against alienation. We
think there can be no doubt, therefore, that the title of the
act, which states the subject to be, "An act enabling In-
dians to sell and alien their lands," is sufficient to support
the provision removing all the restrictions named in the
treaty and in the deed. It follows that these restrictions

have been removed, and that the land in question is now taxable.

The judgment appealed from is therefore affirmed.

FULLERTON, HADLEY, and·DUNBAR, JJ., concur.

RUDKIN, ROOT, and CROW, JJ., took no part.