[No. 5331.    Decided April 13, 1905.]

DICK JACKSON, *Appellant*, v. WILLIAM A. THOMPSON, *as Administrator etc. of the Estate of John Puyallup, Deceased, et al., Respondents.*[1]

INDIANS—TREATIES—PUBLIC LANDS—GRANTS—RESTRICTION ON ALIENATION—DEEDS—REPUGNANCY.    A restriction on alienation in a patent of lands allotted to an Indian, pursuant to a treaty, is not void because repugnant to the *habendum* clause and grant of an absolute fee, since that rule does not apply where the Indians are wards of the government; and such patent passes only the right of possession and occupancy.

SAME—WILLS—DEVISE VIOLATING RESTRICTION ON ALIENATION. The restriction on the alienation in a patent to an Indian allottee on the Tulalip reservation, prevents the disposition of the lands by will.

1Reported in 80 Pac. 454.

Appeal from a judgment of the superior court for Sno-homish county, Denney, J., entered July 11, 1904, upon findings in favor of the defendants, after a trial on the merits before the court without a jury, in an action to set aside the probate of a will. Reversed.

*George H. Funk,* for appellant.

*Merrick & Mills,* for respondents.

DUNBAR, J.—This is an action to contest the will of John Puyallup, brought by the appellant, who claims to be an heir at law of said John Puyallup. The respond-ents Ella Steve and George Sneatlum are devisees under the will of John Puyallup, executed on the 8th day of December, 1902, which will was duly admitted to probate, and the purpose of this action is to set aside the probating of this will. The will was proven as a nuncupative will, and concerning the manner of the proof there is no ques-tion raised. But it is the appellant's contention, (1) that the decedent, John Puyallup, under the patent which was is-sued to him by the United States, and the treaties govern-ing the patent, had no power to devise the land in ques-tion; and (2) that the will attempted to be sustained by respondents, being a nuncupative will, cannot operate upon the title to real estate.

The land deeded by the decedent was upon the Tulalip Indian reservation, in the state of Washington, thirty acres having been willed to Ella Steve and ten acres to George Sneatlum. In the year 1855, a treaty was made between the United States of America, acting through its agent, the Hon. Isaac I. Stevens, at that time governor of the territory of Washington and superintendent of In-dian affairs for said territory, and the chiefs, delegates, and head men of the Duwamish and other allied tribes,

then occupying the northwestern portion of what is now
the state of Washington. This treaty was afterwards rati-
fied and confirmed by the Senate and President of the
United States, in the year 1859, and became a binding
treaty. Art. 7 of the treaty refers to, and adopts, art. 6
of the treaty with the Omaha Indians, and is to the fol-
lowing effect:

"The President may hereafter, when in his opinion the
interests of the territory shall require and the welfare of
the said Indians be promoted, remove them from either or
all of the special reservations hereinbefore made to the
said general reservation, or such other suitable place within
said territory as he may deem fit, on remunerating them for
their improvements.  .  .  ."

It provides, also, that the President may, at his dis-
cretion, cause the whole, or any portion, of the lands
thereby reserved to be surveyed into lots, etc., and assign
the same to such individuals or families as are willing to
avail themselves of the privilege and will locate thereon
as a permanent home, on the same terms and subject to
the same regulations as are provided in the sixth article of
the treaty with the Omahas. Said sixth article also con-
tains the following provision:

"And he [the President] may prescribe such rules and
regulations as will insure to the family in case of the death
of the head thereof the possession and enjoyment of such
permanent home and the improvements thereon. And the
president may at any time in his discretion, after such
person or family has made a location on the land as-
signed for a permanent home, issue a patent to such per-
son or family for such assigned land, conditioned that the
tract shall not be aliened or leased for a longer term than
two years, and shall be exempt from levy, sale, or for-
feiture; which conditions shall continue in force until a
state constitution, embracing such lands within its bound-
aries, shall have been formed and the legislature of the
state shall remove the restrictions."

The decedent was a full-blooded Indian, and his wife, Nancy, died prior to his death. It is conceded that the appellant is a relative and heir at law of the decedent, and that the respondents claim under the nuncupative will only. The patent which was issued to John Puyallup, after reciting the treaty as a basis of its issuance, proceeds as follows:

"Now, know ye, that the United States of America, in consideration of the premises and in accordance with the directions of the President of the United States under the aforesaid sixth article of the treaty of the 16th day of March, Anno Domini 1854, with the Omaha Indians, has given and granted, and by these presents does give and grant, unto the said Kuds-cha-ons, or John Puyallup, as the head of the family, as aforesaid, and to his heirs, the tracts of land above described, but with the stipulation contained in the said sixth article of the treaty with the Omaha Indians that the said tracts shall not be aliened or leased for a longer term than two years and shall be exempt from levy, sale or forfeiture, which conditions shall continue in force until a state constitution embracing such lands within its boundaries shall have been formed, and the legislature of the state shall remove the restrictions and no state legislature shall remove the restrictions without the consent of congress. To have and to hold the said tract of land with the appurtenances unto the said Kuds-cha-ons, or John Puyallup, as the head of the family, as aforesaid, and to his heirs forever, with the stipulation aforesaid."

The facts, as found by the court, are simply that this land was patented to the decedent, and that he had willed the same to the respondents in this case, with the other historical facts which are not disputed. The appellant makes no complaint of the facts found by the court, but assigns as error the conclusions of law made by the court, to the effect that the will was properly proved, and that it was a good and effective will to pass title to the land

in dispute to the respondents.  Respondent Thompson in this case is the administrator of the estate with the will annexed.  So that it will be seen that the question which is squarely presented is, can an Indian patentee, under a patent such as the one under which the decedent held his land, dispose of such lands by will?

It is the contention of the respondents that the language of the patent is conclusive that the estate was a fee simple, with a limitation upon alienation only during the life time of the patentee; that the limitation was purely personal, and did not run with the land; and it is contended that the granting clause, standing alone, would undoubtedly convey a fee simple estate as an estate of inheritance, but that, in any event, the *habendum* strengthens the granting clause, viz.: the words "to have and to hold the said tract of land with the appurtenances unto the said Kudscha-ons, or John Puyallup, as the head of the family as aforesaid, and to his heirs forever;" and that he therefore had by the *habendum* a fee simple estate.  But the respondents do not quote all the *habendum* clause.  In fact, the very portion, viz.: the words added on to the word "forever," "with the stipulation aforesaid," are the words which make the controversy in this case; for the expression "with the stipulation aforesaid," has reference undoubtedly to the stipulation in the granting clause that the said tracts "shall not be aliened or leased for a longer term than two years, and shall be exempt from levy, sale or forfeiture, which conditions shall continue," etc.  It is also contended that the restriction in the patent was void because repugnant to the grant of an absolute fee.

It is true that it has been held that a provision in the devise of land, that land shall not be subject or liable to conveyance or judgment, is void, as was held in a case cited by respondents, viz., *Blackstone Bank v. Davis,* 21

Pick. 42, 32 Am. Dec. 241, based on the doctrine that a condition in a grant or devise that the grantee or devisee should not alien is void because repugnant to the estate. Upon this question there is a conflict of authority, but the principles discussed in the cases cited by respondents are not applicable to the case at bar. The Indians are wards of the government. These arrangements and provisions are provisions in their interest, and by their consent, as indicated in the solemn treaties executed. The government, from the necessities of the case, in consideration of the inexperience of the Indians, was compelled to insert these provisions in deeds which it issued to them to prevent them from becoming the prey of sharpers and speculators, who would, for an insufficient consideration, obtain their lands, the ultimate result being that the Indians would become pensioners upon the government; and the mutual interests of the Indians and the government demanded some such regulations. It was certainly within the power of the government to place any restrictions upon the deeds which it issued to the Indians that it saw fit. It is insisted by the respondents, as an argument against the continued restriction, that, as the heirs of the Indians increase, the restrictions would become burdensome and impracticable, but this is a condition which is within the power of the state and of the general government to relieve, whenever the necessity arises. There can be no question that, under authority, the word "alienate" means, among other things, the power of disposition by will. The following definition of the word is given by Anderson in his Dictionary of Law, on page 48:

"Any method whereby an estate is voluntarily resigned by one man and accepted by another, whether that be effected by sale, gift, marriage settlement, devise or other transmission of property by the mutual consent of the parties."

"A voluntary alienation is where an estate is voluntarily resigned by one person and accepted by another person, whether the transfer be effected by sale, gift, marriage settlement, devise, or other transmission of property by mutual consent of the parties." Kerr, Real Property, § 267.

Williams, Real Property (17th ed.), p. 80, gives the history of the power of alienating lands, and shows that, while theretofore lands were not rendered devisable by will, the change was effected by statutes of the 32d and 34th of Henry VIII., which empowered tenants in fee simple to devise all their lands holden in socage; that it came into general use in the year 1645, when all military tenures were turned into socage; that since then the right of devising freeholds by will has become complete and universal, and that at present it is a right that is enjoyed by any one. To the same effect is Newell, Real Property, § 45, and Rice, Real Property, p. 105. In fact, we think that there is no authority to the contrary.

The question involved in this case, we think, has also been practically decided by this court in *Bird v. Winyer*, 24 Wash. 269, 64 Pac. 178, where the same treaty was construed, and it was held that nothing passed by patent except the right of possession and occupancy of the land described; that the absolute fee remained in the government, and that hence, upon the death of the wife, no rights would pass by inheritance to the children of the wife by a former marriage. The court, in the course of its opinion, said:

"So that it is clear that the grantees under the patent obtained only the possession and right of occupancy of the lands described. There was simply a defeasible title conveyed, and that is the condition of the estate at the present time. When Mary Bird died [in that case it was claimed that the heirs of Mary Bird by a former husband were entitled to the land] no greater estate was created thereby,

and the only remaining member of the family might at any time forfeit all right to possession by failure to occupy and till a portion of the lands, or by roving from place to place.  Admitting, therefore, that Mary Bird took an equal interest with George Bird [her last husband] at the date of the patent, she took only the right to occupy and till the premises while the family lived upon the same.  In any event, at her death she left no greater interest than the right of her heirs to occupy and till the premises. These heirs, not being members of the family, took no other interest in the estate."

So that, if the only right that the wife of the deceased had in the estate in that case was a possessory interest, which interest could be lost by failure to occupy and till, the possessory interest was all the interest that was occupied by the decedent, and that interest could only be maintained by his heirs by fulfilling the conditions which he was bound to fulfill.  The restrictions imposed by the terms of the treaty and by the patent, never having been removed by the action of the state legislature, with the consent of the Congress of the United States, except as to lands embraced in the Puyallup reservation, still remain restrictions upon the land, and, that being true, we think the court erred in holding that the decedent had power to alienate this land and pass title to the same by will.  This conclusion renders unnecessary the discussion of the second proposition advanced by the appellant, viz., that the nuncupative will was ineffectual.

The judgment is reversed, and the lower court instructed to proceed in accordance with this opinion.

MOUNT, C. J., FULLERTON, and HADLEY, JJ., concur.

RUDKIN, ROOT, and CROW, JJ., took on part.