JAMES JOHNSON *et al.* v. WILLIAM WHITE *et al.*

No. 15,102.    (90 Pac. 810.)

SYLLABUS BY THE COURT.

1. WILLS—*After-acquired Property.* After-acquired property will pass under the provisions of a will, where such clearly and manifestly appears by the will to have been the intention of the testator.

2. —— *Construction.* A will should be construed so as to avoid intestacy, if it is reasonably possible so to do.

3. —— *Intention of Testator—Circumstantial Evidence.* In determining the intent of a testator the circumstances under which the will was made may be considered.

4. —— *After-acquired Property.* The will and surrounding circumstances in this case examined and held clearly and manifestly to indicate an intent on the part of the testator that after-acquired property should pass thereunder.

Error from Washington district court; WILLIAM T. DILLON, judge. Opinion filed June 8, 1907. Affirmed.

STATEMENT.

ON and prior to March 9, 1894, Eleanora Johnson owned and occupied eighty acres of land in the state of Nebraska. She was a widow, about sixty-eight years of age. At this date she had a son and a daughter, residing in Washington county, Kansas, who are the plaintiffs in error. Defendant in error John Nelson is her brother. The other defendants in error, except William White, are her grandchildren. On the date above mentioned she made a will, whereby she

bequeathed to her brother and to her children the sum of five dollars each. The provisions of the will which are involved in this controversy read:

"(6) To my friend William White, of the county of Gage and state of Nebraska, I give and bequeath for his use during the lifetime of said William White [here follows a description of land], said land being the farm upon which I now reside; it being my full wish and desire that said William White shall have the use, during his lifetime, of the above-described land, without any charge whatsoever, excepting only the interest charge upon the mortgage now upon said land, and the taxes that may be assessed against said land, and the necessary repairs on and about said premises.

"(7) Upon the event of the death of said William White aforesaid, I give, devise and bequeath to my grandchildren then living, share and share alike, the fee-simple title to and all and every my interest in and to [here follows a description of land].

"(8) To my friend William White, aforesaid, I give, devise and bequeath all the rest, residue and remainder of my property, real, personal or mixed, and wherever situated.

"(9) I hereby nominate and appoint my said friend, William White, as the executor of this, my last will and testament, and I specially charge him that he conform with my wishes herein expressed. And as I repose special confidence in the said William White, my executor herein named, it is my special desire and will that no bond be required of him, as such executor of this, my last will and testament."

William White, who was about forty-five years of age and unmarried, lived on the farm in Nebraska with the testatrix. In 1899 she conveyed the Nebraska land to him. In 1902 the land thus conveyed was sold, and they bought 120 acres in Washington county, Kansas, which was conveyed to them jointly. Thereafter they occupied this land together until her death, which occurred March 14, 1904.

On April 1, 1905, the will was duly probated in Washington county, and on August 29 thereafter this suit was brought in the district court of that county to contest the validity of the will. Defendant William

White was granted a decree sustaining the will and adjudging him to be the owner in fee of the land. Upon the trial the court made and filed findings of fact and conclusions of law. Among the facts found are the following:

"(4) The testatrix and her son, the plaintiff James Johnson, lived in Marshall county, Kansas, for many years, upon land which they owned there, when the farm was disposed of in some way, not disclosed by the evidence; and in about the year 1892 she went to Gage county, Nebraska, and invested her money in a farm near Liberty, in that county.

"(5) At the time when the testatrix bought the farm in Gage county, Nebraska, Dorothea Wilson, her daughter, who is one of the plaintiffs in this action, offered the testatrix a home with her, in or near Marysville, where she lived, but for some reason, not disclosed by the evidence, the mother, although she was then about sixty-eight years old, preferred to and did go alone, and without either of her children to live with her, upon her Nebraska land.

"(6) After the testatrix went to Gage county to live, and prior to the making of the will in question, she entered into some kind of an arrangement with defendant William White, by which he was to live with her, or in a part of her house, and farm her land, but whether he managed the farm for a share of the crops or was a hired man or partner is not made clear by the evidence; but whatever their business relations were, they continued to live and do business together until her death, which occurred on the 14th day of March, A. D. 1904. At the time this arrangement was made with defendant William White he was about forty-five years old, and was not in any way related to the testatrix, either by blood or marriage.

"(7) In the early part of March, A. D. 1894, the testatrix became severely afflicted with strangulated hernia, and was compelled to undergo a surgical operation, and on the 9th day of March, the day before the said operation was performed, she directed one of the attending physicians to tell E. E. Hardin, the banker at Liberty, to come out and write her will."

"(9) At the time the said will was executed defendant William White was on the farm, and was

11—76 KAN.

making it his home, in a part of the house in which the testatrix lived, but it does not appear from the evidence that he took any part in procuring the execution of the will; and he was not present in the room when the will was executed.

"(10) Both before and after the time when the will was executed the testatrix informed a neighbor, while she was living on the Nebraska farm, that she wanted all her property to go to defendant William White, except what was necessary to pay her debts and funeral expenses and enough to bar her children from claiming the property. At the time this was said she still owned the real estate described in the will, which was all the real estate she owned at the time the will was made."

"(13) While they were in the act of moving to the Washington county farm, they stopped over night with a farmer, to whom the testatrix stated that it was her desire that defendant William White have her property when she died, or some words to that effect, and gave as her reason that her children had forsaken her."

"(15) Defendant William White lived with the testatrix constantly from the time he went upon her farm in Gage county, Nebraska, in 1893, until she died, in March, 1904, a term of about eleven years, and she was eighty years old when she died."

*W. S. Glass,* and *W. W. Redmond,* for plaintiffs in error, and defendants in error Eleanora Ernest and E. L. Willson, jr.

*Edgar Bennett,* and *Charles Smith,* for defendant in error William White.

The opinion of the court was delivered by

GRAVES, J.: It is urged by the plaintiffs in error that the only provision in the will under which William White can claim the Kansas land is in the residuary clause thereof, which is denominated paragraph 8. This clause is claimed to be insufficient, because the land was acquired after the will was executed. Under the common law a will did not affect after-acquired real estate. That rule, however, has been changed in

this state by section 7991 of the General Statutes of 1901, which reads:

"Any estate or interest in lands or personal estate or other property acquired by the testator after the making of his will shall pass thereby in like manner as if held or possessed at the time of making the will, if such shall clearly and manifestly appear by the will to have been the intention of the testator."

The will, when construed in the light of the surrounding circumstances, indicates quite clearly that the testatrix intended all of her property to vest absolutely in White except the real estate described in the will. Although advanced in years she left her children and moved to another state alone, where she bought a farm and lived thereon. It does not appear that she had any communication with her children, personal or otherwise. The fact that she cut them off with a pittance shows a complete estrangement on her part. William White had lived with her constantly after she settled in Nebraska, and managed her affairs. At the time she made the will she owned no property to which the residuary clause would apply. It was apparently a useless and meaningless provision. The facts disclose, however, that the will was made immediately before a surgical operation from which she might recover. It was not made in contemplation of certain and impending death. She might live. It seems more reasonable to assume that this clause was inserted in the will for some purpose than to conclude otherwise. The testatrix may have contemplated the chances of a recovery and made this provision to cover future possibilities. If this real estate is not devised by this clause of the will, then the testatrix died intestate. Such a result will be prevented if it can be done by any reasonable construction. (*Durboraw v. Durboraw*, 67 Kan. 139, 143, 72 Pac. 566.)

By giving full force to the plain language of the will the wishes of the testatrix will be carried out;

otherwise the result will be clearly contrary to her desire. She was forsaken by her children in her old age, and was cared for by William White. Her regard for her children and her friendship for White are clearly shown by the will. These conditions indicate that she had some reason for making a will with provisions broad enough to insure protection to her friend. Upon the whole case we think it was the intention of the testatrix to devise all the property she might own at her death to William White, regardless of when it was acquired or where located.

The judgment of the district court is affirmed.