[No. 23218. Department Two. December 15, 1931.]

*In the Matter of the Estate of* LITTLE JOE, *Whose True Indian Name was Sahl-Pud, Deceased.*[1]

[1]Reported in 5 P. (2d) 995.

*Joseph H. Smith* and *Clarence J. Coleman,* for appellant.

*M. H. Forde,* for respondent.

HOLCOMB, J.—This appeal is from the decree of distribution in the estate of Little Joe, whose true Indian name was Sahl-Pud, deceased. Appellant is the administrator of the estate of Jennie Joe, the widow of decedent. Respondents are the administrator with the will annexed and two nephews of Little Joe, deceased. On the hearing of the final account and petition for distribution in the court below, it held that all the property of the estate of Little Joe was his separate property subject to his power of disposition by will, and that respondents were distributees in the will and entitled to the property under the will of Little Joe, overruling all claims of the estate of Jennie Joe, deceased, his widow, to the property.

The facts were stipulated by counsel at the hearing, and with necessary interpositions of documents stipulated, but referred to only as exhibits, substantially as follows:

Little Joe and Jennie Joe, his wife, were Indians and wards of the United States government. Pursuant to the treaty between the United States government, on one side, and the Snohomish and other tribes, bands and subordinate bands of Indians, on the other side, made by Governor Stevens at Point Elliott, in the territory of Washington, on January 22, 1855, ratified March 8, 1859 (12 U. S. Stat. 927), certain lands were withdrawn from the public domain and organized into Indian reservations, with provisions that these lands could, by the President of the United States, be parceled out to such Indians as would avail themselves of the privilege of making homes thereon.

The treaty, by reference, made a part of it the sixth

paragraph of the treaty of the United States with the Omaha Indians made in 1854. The terms of the sixth paragraph of that treaty are set out in full in 10 U. S. Stat. 1044, and in *Bird v. Winyer,* 24 Wash. 269, 64 Pac. 178, and in *Jackson v. Thompson,* 38 Wash. 282, 80 Pac. 454, and, also, in *Meeker v. Kaelin,* 173 Fed. 216. By the sixth clause of the treaty with the Omahas, an Indian who was married and had no children should be entitled to receive one hundred sixty acres of an allotment, when allotments should be made under the treaty.

In 1905, Little Joe, who was then married to Jennie, first received a patent under the treaty of Point Elliott for one hundred sixty acres, as being a married man without children. In 1913, that patent was cancelled and a new one issued in lieu thereof while Little Joe and Jennie were still married. They continued to occupy the allotment made to Little Joe for a number of years.

Later, under the supervision of the Tulalip Indian Agency, the timber on the allotment was sold and the money left in trust under the control of the agency. In 1926, part of that money was used to buy the sixty acres of land here involved. A house was then built on this land, in which Little Joe and Jennie resided until September, 1927, when Little Joe died. Jennie continued to live on the sixty acre tract until 1929, when she died. Little Joe left a will which devised certain restricted property to his nephews. Jennie Joe also left a will in which she left all her property to certain other parties.

Upon the settlement of the Little Joe estate, the administrator of the Jennie Joe estate filed his objections, which were overruled, and the property distributed in accordance with the will of Little Joe. The material portions of the will of Little Joe read:

"I hereby give, devise and bequeath, to my loving wife Jennie all my property both real and personal, the real property consisting of my restricted allotment situated in the county of Snohomish, Washington, particularly described as follows, to-wit:

"The northwest quarter (NW¼) of section fourteen (14) township thirty (30) range four (4) east, being Tulalip allotment No. T-39B.

"My personal property consists at this time of twenty-two thousand, five hundred and forty-four dollars and ninety-two cents ($22,544.92) held in trust by the United States government. It is my wish that this money or whatever amount be on hand and remaining, at the time of my demise pass to my wife Jennie, as aforesaid, with this proviso, to-wit:

"Upon the death of my loving wife Jennie any, and all, of the remaining property, real and personal, above described shall descend in equal shares to my nephews Wilson George and Joseph Willard George.

"I hereby declare that I have no issue, nor brother nor sister, and that Wilson George and Joseph Willard George are the children of my deceased brother George Willy and my nearest kin."

The property described by the will is not the same property now in the estate, its description being as follows:

"The NE¼ of the SE¼ and N½ of SE¼ of SE¼, section 22, township 30, N. R. 4 E. W. M., containing 60 acres, more or less, situated in Snohomish county, Washington."

The granting clause of the patent issued on April 3, 1913, to Little Joe reads:

"Now Know Ye, that the UNITED STATES OF AMERICA, in consideration of the premises and in accordance with the directions of the President of the United States under the aforesaid sixth article of the treaty of the sixteenth day of March, anno Domini one thousand eight hundred and fifty-four, with the Omaha Indians, HAS GIVEN AND GRANTED, and by these presents, DOES GIVE AND GRANT, unto the said Sahl-pud, or

Little Joe, and to his heirs, the tract of land above described, . . ."

Then follow certain restrictions as to alienation and leasing in accordance with the provisions of the sixth clause of the treaty with the Omahas. The consent of the Tulalip Indian Agency was obtained when the property in question was purchased with the proceeds of the timber on the allotment of Little Joe.

The $22,544.92 in the custody of the Tulalip Indian Agency to the credit of Little Joe at the date of his will had been reduced to about $14,000 at the time of the death of Jennie. This sum of money, as well as the original allotment, has been distributed by the United States department of the interior to the two nephews according to the will of Little Joe. The sixty acre tract purchased by Little Joe in 1926 is an unrestricted tract within the Tulalip Indian reservation.

Appellant makes two contentions: (1) that the property involved is community property of Little Joe and Jennie Joe under the laws of this state; and (2) that Little Joe died intestate as to the property here involved.

Appellant argues that the situation here existing is identical with one where a homestead is granted by the United States government under the United States homestead laws in which the title was initiated and completed during the existence of the community, citing *Krieg v. Lewis,* 56 Wash. 196, 105 Pac. 483, 26 L. R. A. (N. S.) 1117, and *Curry v. Wilson,* 57 Wash. 509, 107 Pac. 367.

Lands acquired under the United States homestead laws are acquired by purchase under our law, and when title is obtained, or earned, during coverture, are community property. *Kromer v. Friday,* 10 Wash. 621, 39 Pac. 229, 32 L. R. A. 671; *Ahern v. Ahern,* 31 Wash. 334, 71 Pac. 1023, 96 Am. St. 912; *Cunningham v.*

*Krutz,* 41 Wash. 190, 83 Pac. 109, 7 L. R. A. (N. S.) 967.

The same is true as to lands acquired under United States preemption laws. *Curry v. Wilson, supra.*

The nature of the title granted by the United States to Indian allottees is entirely different. It is also by a restricted grant of title. At first this court held that they received nothing but possessive titles. *Bird v. Winyer, supra.* We accordingly held in *Jackson v. Thompson, supra,* that an Indian who received title to an allotment while the restrictions still remained upon the land had no power to alienate the land or to pass title to it by will. From this pronouncement by this court, however, we were compelled to recede, in view of certain decisions by the Federal courts, and hold that an Indian allottee under patent from the United States received a base or qualified fee and an inheritable title, in *Guyatt v. Kautz,* 41 Wash. 115, 83 Pac. 9, a case not cited by either party. In that case, this court avoided deciding whether or not the title acquired by an Indian and his wife during coverture would be community estate. We held, however, that the laws of descent of this state applied as though of community property. It was said that it was applied

" . . . by reason of necessity, and to carry out the evident purpose of the treaty in securing said estate to the family, and not because we undertake at this time to decide either that the land was community property, or that while the tribal relations still existed the laws of descent of this state applied to these Indian lands,"

under the doctrine announced in *Jones v. Meehan,* 175 U. S. 1. In that case, the original allottee had not become a citizen when he died, nor had his wife. They were still members of the Puyallup tribe.

In the case before us, the patent issued to Little Joe in 1913, in lieu of the former one, contained the re-

strictions under the sixth clause of the treaty with the Omahas. Evidently, he and his wife had not then become citizens. They were made citizens by an act of Congress of June 4, 1924. Appellant argues that, regardless of whether they were citizens at the time they received the patent to the allotment, they received the sixty acre tract in question during the existence of the community, free from the restrictions of the United States by treaty or statute.

We have been cited to no case exactly in point upon this important question as to whether or not the community property laws govern.

Respondents cite *Bird v. Winyer, supra; Bird v. Terry,* 129 Fed. 472; and *Meeker v. Kaelin, supra,* as controlling.

All these cited cases arose over patents of allotted lands to Indians which originated when the land was restricted and held in trust by the government, while in the instant case the government retained no control over, nor interest in, this sixty acre tract. It is unrestricted property, subject to the full jurisdiction of the state. We agree with appellant that the title acquired by Little Joe to the sixty acre tract was an absolute fee simple title, but that does not determine whether it is community or separate.

In determining this question, we turn to our decisions in general respecting community and separate property.

Under the Federal decisions cited above and our own cases, it must be held that the original allotment to Little Joe was his separate estate, regardless of the fact that the allotment was for the benefit of himself and his wife. As was said by Judge Donworth in the *Meeker* case, supra:

"The lands in the Indian reservation were not public lands, nor were these patents issued in pursuance of a

law of the United States, within the meaning of that section. . . . In determining what persons became originally vested with interests in the land by virtue of these patents, granted by the national government to effectuate the terms of a treaty, recourse can be had only to the treaty, the patents, and the laws of the United States.'' 173 Fed. 216.

In *Bird v. Winyer, supra,* as modified by *Guyatt v. Kautz, supra,* title under such treaty and statutes of the United States vested in the head of the family therein named and other members of the family acquired no interest, though named in the patent. It is therefore the settled law of this state that the allottee under such patent took title thereto as his own separate estate. The funds used in the purchase of the sixty-acre tract in question, having been acquired by the sale of the timber on the one hundred sixty acre allotment were, therefore, manifestly separate funds. Consequently, the sixty acre tract became and remained the separate estate of Little Joe. *In re Brown's Estate,* 124 Wash. 273, 214 Pac. 10; *Riverside Finance Co. v. Griffith,* 140 Wash. 322, 248 Pac. 786; *Norman v. Levenhagen,* 142 Wash. 372, 253 Pac. 113; *In re Williams' Estate,* 145 Wash. 19, 258 Pac. 851. Compare *Hall v. Hall,* 41 Wash. 186, 83 Pac. 108; *Jones v. Meehan, supra.*

▆ In support of appellant's second contention, resting upon that clause of the will reading:

"I hereby give, devise and bequeath to my loving wife Jennie all my property, both real and personal, the real property consisting of my restricted allotment"—

which was then described, appellant argues that the words "consisting of" limit the general clause and make it a specific devise. *Baker v. Soltau,* 94 N. J. Eq. 544, 118 Atl. 682, by a Chancellor, affirmed on appeal

in 119 Atl. 924; *Farish v. Cook,* 6 Mo. App. 328; *Allison v. Hitchcock,* 309 Mo. 488, 274 S. W. 798; *Dunlap v. Hart,* 274 Mo. 600, 204 S. W. 525, 3 A. L. R. 1493; and *In re Behre's Estate,* 130 Wash. 458, 227 Pac. 859.

In this state we have a statute, Rem. Comp. Stat., § 1411, reading:

"Any estate, rights or interest in lands acquired by the testator after the making of his or her will shall pass thereby, and in like manner as if owned at the time of making the will, if such manifestly appear by the will to have been the intention of the testator."

The decisions from other states cited by appellant seem to have devolved upon no such statute.

In Kansas, the statute reads:

"Any estate or interest in lands or personal estate or other property acquired by the testator after the making of his will, shall pass thereby in like manner as if held or possessed at the time of making the will, if such shall clearly and manifestly appear by the will to have been the intention of the testator."

It will be seen that the Kansas statute is almost identical with ours. In *Durboraw v. Durboraw,* 67 Kans. 139, 72 Pac. 566, a case involving a clause in the will reading:

"I hereby devise and bequeath to my grandson, . . . all my real and personal property of every description and wherever situate. The real property above referred to is more particularly described as follows:"

then describing real estate that he did not then own, but afterwards acquired, the court held that the will must be construed so as to prevent intestacy with reference to any portion of the estate of the decedent if that could reasonably be done; and that, under the terms of the above statute, it was not necessary that the will show that the testator had in contemplation, at

the time of making it, the future acquisition of real estate which he intended should pass thereby; and that it is not necessary that real estate to be acquired in the future be referred to in express terms in order to pass. To the same effect is *Johnson v. White,* 76 Kans. 159, 90 Pac. 810; *Briggs v. Briggs,* 69 Ia. 617, 29 N. W. 632; and *Rock v. Zimmerman,* 25 S. D. 237, 126 N. W. 265. *In re Behre's Estate, supra,* is not apt, for we there specifically disregarded all discussion relating to ademption, the only question decided being as to how the division of the estate should be made to those named in the will.

The right to make testamentary disposition of one's estate is a valuable right, and will always be sustained when possible.

We are of the opinion that the will disposed of all of Little Joe's estate under § 1411, *supra,* of which he died seized and that the same was subject to disposition by will.

The decree of the lower court is in all respects affirmed.

TOLMAN, C. J., BEALS, MAIN, and MILLARD, JJ., concur.