### BIRD v. TERRY.

(Circuit Court, D. Washington, W. D. February 28, 1903.)

#### No. 773.

1. INDIANS—ALLOTMENT OF LANDS IN SEVERALTY—RIGHTS CONVEYED BY PATENT UNDER TREATY.

A treaty made in 1854 between the United States and the Puyallup and other bands of Indians provided for the allotment and conveyance in severalty of land to Indians who were heads of families upon certain conditions as to residence and cultivation, and with certain restrictions as to alienation, subject to which the land was to be theirs for a permanent home for themselves and their families and inheritable by their heirs. *Held*, that a patent to an Indian under such treaty for lands previously allotted to him, which recited the terms of the grant, conveyed to him a vested estate, which could not be taken away or affected by any subsequent action of the executive department of the government so long as he complied with the conditions.

2. SAME—RIGHTS FOLLOWING CITIZENSHIP—PROTECTION OF PROPERTY RIGHTS.

An Indian, who, by practicing the habits of civilized life, and living on and cultivating land allotted to him in severalty, has become under the law a citizen of the United States, is entitled to all the rights of other citizens, and may prosecute and defend suits in any court of competent jurisdiction, state or federal, in respect to his property rights, and his ownership and use of land which has been patented to him under a treaty are matters not subject to the decision or control of either Congress or the executive branch of the government.

In Equity. The following is the agreed statement of facts:

It is hereby stipulated and agreed by and between Messrs. Reid & Meade, solicitors for complainant, George Bird, and Edward E. Cushman, Assistant United States Attorney, and attorney for defendant, Frank Terry, that the following are material facts which could be proven under the issues, and that they are hereby stipulated to be the controlling facts in this case. It is fur-

ther stipulated and agreed that upon this statement of facts this cause is submitted to the court for judgment, and that by submitting the case upon the said agreed statement of facts neither complainant nor defendant waive any right to review or appeal from said judgment; all of which rights are expressly reserved the same as though said case had been regularly submitted and tried upon evidence taken.

(1) That on the 26th day of December, 1854, a treaty was concluded and signed between the Puyallup and other bands of Indians on the one part and the United States on the other part, and was thereafter duly ratified and confirmed by the President and Senate of the United States. Said treaty is found in Act Dec. 26, 1854 (10 Stat. 1132).

(2) That on and prior to the 17th day of January, 1881, said George Bird was a member of the Puyallup tribe of Indians, and was one of the members entitled to an assignment of lands under the provisions of said treaty, and that on said day an allotment of land was made to complainant, under the provisions of said treaty, by an instrument in writing in the following words:

"No. 50.                                  Department of the Interior,
                                           "Office of Indian Affairs,
                                           "January 17th, 1881.

"This is to certify, that Teow-away, or George Bird, a member of the Puyallup tribe of Indians, having expressed a desire to adopt habits of settled industry, and to receive an allotment of lands for the purposes of cultivation, as provided for in the 6th article of the treaty with said tribe, concluded December 26th, 1854 (Vol. 10, page 1133), is entitled to ———— acres of land, and that he has selected for such purposes the N. E. ¼ of S. W. ¼ of Sec. 12 in township 20, north of range 3 east of the Willamette Meridian, in Washington Territory, containing forty acres.

"The said Teow-away, or George Bird, is entitled to and may take immediate possession of said land and occupy the same, and the United States guarantees such possession, and will hold the title thereto in trust for the exclusive use and benefit of himself and his heirs so long as such occupancy shall continue.

"This certificate is not assignable except to the United States, or to other members of the tribe under such rules and regulations as may be hereafter prescribed by the Secretary of the Interior, and the said Teow-away, or George Bird, is expressly prohibited from assigning or attempting to assign the same, and from selling or transferring the said land or disposing of the same, or any interest therein, to any person or persons whomsoever (except as above named) under penalty of an entire forfeiture thereof.

                              "E. M. Marble, Acting Commissioner."

(3) That said George Bird availed himself of the privilege thus offered, and accepted said assignment, and located upon said land as a permanent home, and cleared and cultivated said land, and built a dwelling house and other improvements thereon.

(4) That on the 30th day of January, 1886, under the provisions of said treaty, the United States executed and delivered to said Bird a patent for said land (and some additional land), which said patent is in the words and figures following, to wit:

"The United States of America, to All to Whom these Presents Shall Come, Greeting:

"Whereas, by the sixth article of the treaty, concluded on the twenty-sixth day of December, Anno Domini one thousand eight hundred and fifty-four, between Isaac I. Stevens, governor and superintendent of Indian Affairs of Washington Territory, on the part of the United States, and the chiefs, headmen, and delegates of the Nisqually, Puyallup, Steilacoom, Squawksin, S'Homanish, Stehchass, T'Peeksin, Squiatl, and Sa-heh-wamish tribes and bands of Indians, it is provided that the President, at his discretion, cause the whole or any portion of the lands hereby reserved, or of such other land as may be selected in lieu thereof, to be surveyed into lots, and assign the same to such individuals or families as are willing to avail themselves of the privilege, and will locate on the same as a permanent home, on the same terms and subject

to the same regulations as are provided in the sixth article of the treaty with the Omahas, so far as the same may be applicable;

"And whereas, there has been deposited in the General Land Office of the United States an order bearing date January 20th, 1886, from the Secretary of the Interior, accompanied by a return dated October 30th, 1884, from the Office of Indian Affairs, with a list approved October 23rd, 1884, by the President of the United States, showing the names of members of the Puyallup band of Indians who have made selections of land in accordance with the provisions of said treaties, in which lists the following tracts of land have been designated as the selection of Teo-away, or George Bird, the head of a family consisting of himself and Mary, viz.: The southwest quarter of the northwest quarter of section fifteen (40.00 acres), the southeast quarter of the northeast quarter and the northeast quarter of the southeast quarter of section sixteen (80.00 acres), in township twenty-one north, and the northeast quarter of the southwest quarter of section twelve (40.00 acres), in township twenty, north of range three east of the Willamette Meridian, Washington Territory, containing in the aggregate one hundred and sixty acres:

"Now know ye, that the United States of America, in consideration of the premises and in accordance with the direction of the President of the United States under the aforesaid sixth article of the treaty of the sixteenth day of March, Anno Domini one thousand eight hundred and fifty-four, with the Omaha Indians, has given and granted, and by these presents does give and grant, unto the said Teo-away, or George Bird, as the head of the family as aforesaid, and to his heirs, the tracts of land above described, but with the stipulation contained in the said sixth article of the treaty with the Omaha Indians, that the said tracts shall not be alienated or leased for a longer term than two years, and shall be exempt from levy, sale or forfeiture, which conditions shall continue in force until a state constitution embracing such lands within its boundaries shall have been formed and the legislature of the state shall remove the restrictions, and no state legislature shall remove the restrictions without the consent of Congress.

"To have and to hold the said tracts of land, with the appurtenances, unto the said Teo-away, or George Bird, as the head of the family as aforesaid, and to his heirs forever, with the stipulation aforesaid.

"In testimony whereof, I, Grover Cleveland, President of the United States, have caused these letters to be made patent, and the seal of the general land office to be hereunto affixed.

"Given under my hand at the city of Washington, this thirtieth day of January, in the year of our Lord, one thousand eight hundred and eighty-six, and of the Independence of the United States the one hundred and tenth.

"By the President:                        Grover Cleveland,
"S. W. Clark,                             By M. McKean, Secretary.
      "R."

(5) That at all times after the making of said assignment and the issuance of said patent said Bird voluntarily took up, within the limits of the United States, and upon the lands in said patent described, his residence, separate and apart from any tribe of Indians, save as qualified by paragraph 9 hereof, and adopted the habits of civilized life, and has at all times since the issuing of said patent continued to exercise habits of civilization within the county of Pierce and state of Washington, and has at all such times continued to occupy and till a portion of the land thus assigned and patented to him.

(6) That on and prior to the 17th day of January, 1881, said George Bird and one Mary Bird were husband and wife, and were residing on the land in said patent described, and that said Mary Bird is the "Mary" mentioned in said patent as a member of complainant's family. That said Mary Bird died on or about the 15th day of August, 1887, and left her surviving two sons, Joseph Winyer and Henry Winyer, who had been born to said Mary Bird by marriage to a former husband. That said sons were the only surviving issue of said Mary Bird. That said Mary Bird was born of Indian parents, and the father of said Joseph and Henry Winyer was an Indian. That said Joseph married a full-blood Indian woman, and one Frank Winyer is the issue of said marriage. That thereafter the mother of said Frank died, and

said Joseph then married Sallie Winyer, an Indian woman. That said Joseph died while he was the husband of Sallie, and after the death of Mary Bird. That said Sallie has since died, and one Mary Charley and said Frank Winyer are now the heirs of said Joseph Winyer.

(7) That said Joseph Winyer and Henry Winyer were never members of complainant's family, and they each received assignments of land upon said reservation at the time complainant was awarded the assignment of land hereinbefore described.

(8) That said Bird has leased said land in said assignment and patent described to one Frank Albert for a period of time less than two years, and for a full and fair consideration paid by said Albert to said Bird.

(9) That the defendant, Frank Terry, is superintendent of the Puyallup Indian School, and agent of the Puyallup Indian reservation, occupied by allottees of the Puyallup Indian Tribe, in which reservation are included the lands in said patent described; and that as such agent it is his duty to perform such duties, not inconsistent with law, as may be prescribed by the President, Secretary of the Interior, or Commissioner of Indian Affairs. Section 2058, Rev. St.

(10) That under the act of Congress of March 3, 1893 (27 Stat. 633, c. 209), and under the instructions and regulations of the President of the United States, Secretary of the Interior, and Commissioner of Indian Affairs, the Puyallup Indian Commissioners ascertained, found, and determined that George Bird was the owner of one-half of said land, that Henry Winyer was the owner of one-fourth thereof, that Sallie Winyer was the owner of one-eighth thereof, and that Frank Winyer was the owner of one-eighth thereof. That said Puyallup Indian Commissioners did not ascertain, find, or determine said ownership by or through any proceeding in any court, but arrived at said determination after making such investigation as they could among the Indians. That this finding and determination of the Puyallup Indian Commissioners was, on July 1, 1896, approved, and said ownership confirmed accordingly, by the Secretary of the Interior.

(11) That certain rules and regulations have been adopted and promulgated by the Secretary of the Interior and Commissioner of Indian Affairs regarding the leasing by Indian allottees of allotted lands, which said rules and regulations are applicable to the Puyallup Indian reservation and the lands in question. That among other regulations it is provided that all leases shall be submitted to and approved by the Secretary of the Interior, and that all rental money shall be paid to the Indian agent for distribution to the parties found to be the owners by the said Puyallup Indian Commissioners; and it is further made the duty of the Indian agent to exclude, eject, and oust from any such allotted lands tenants or lessees refusing to comply with the aforesaid regulations.

(12) That the lease made by said Bird to said Albert was made without complying, and without any attempt on the part of either to comply, with the foregoing rules and regulations. That the said agent has never consented to the occupancy of said land by said lessee, Albert, or to his residence or presence on said reservation. Said Bird claims the right to lease said land for a period less than two years without the intervention of said Secretary of the Interior, Indian agent, or other person. That the only reason why said Bird is unwilling to execute a lease before said Indian agent and in accordance with the foregoing rules and regulations is that he claims to be the sole owner of the whole of said lands, and entitled to all the rents and profits thereof, and that said Secretary of the Interior and Indian agent claim that under said treaty, patent, law, and findings of said Puyallup Indian Commissioners the said Bird is only the owner of a one-half interest in said land, and is only entitled to one-half of the rents and profits thereof. If the rental money falling due under said lease or under any lease made by said Bird comes into the hands of said Indian agent, he will forthwith pay to said Henry Winyer, Frank Winyer, and Mary Charley one-half thereof.

(13) That said Terry will, unless restrained by this court, eject and remove said Frank Albert, or any other lessee or tenant of the complainant under any lease, unless made in conformity with the foregoing rules and regulations. That said land so leased by said Bird to said Albert is of great value, to wit,

of the value of ten thousand dollars, and that, if said Terry is permitted to evict said Albert therefrom, the complainant will thereafter be unable to induce any person to lease said premises directly from him. That complainant is an old man, and unable, from his age, to cultivate said land, and, if he is thus prevented and hindered from leasing said land, its value will be largely lost to complainant.

(14) That heretofore said George Bird instituted a suit in the superior court of the state of Washington for the county of Pierce against Henry, Frank, and Sallie Winyer to determine the ownership of said tract of land. That said superior court is and was a court of general law and equity jurisdiction. That due service of process was made upon each of said defendants, and they thereafter appeared in said suit by their attorney, and fully litigated therein their said rights and claim to ownership of said land. That said superior court held and adjudged that the said Bird owned but a one-half interest in said land, and that said Winyers owned a one-half interest therein. That thereupon said Bird appealed said case to the Supreme Court of the state of Washington, the highest court of said state to which said case could be appealed. That said case was duly argued before and presented to said court by counsel for the respective parties. That after due hearing and consideration the said Supreme Court reversed the order of the superior court, and held and decided that said Winyers had no right, title, or interest in or to said land. That said Sallie Winyer died after the decision of said case by said Supreme Court. Said case is reported in 24 Wash., at page 269, 64 Pac. 178. Said case has never been appealed.

(15) That the Secretary of the Interior, Superintendent of Indian Affairs, and said Terry maintain that said state courts have and had no jurisdiction to determine the issues between said Bird and said Winyers, for the reason that the said land, the subject-matter of said suit, is and was allotted land on an Indian reservation.

(16) Paragraphs 2 and 6 of the treaty with the Puyallups and other Indian tribes made on December 26, 1854 (10 Stat. 1132), are hereby referred to and made a part of this statement of facts; article 6 of the treaty with the Omahas, made March 16, 1854 (10 Stat. 1043), is hereby referred to and made a part of this statement of facts; that the act of Congress of February 8, 1887 (24 Stat. 390, c. 119), is hereby referred to and made a part of this statement of facts; the act of the Legislature of the state of Washington of March 22, 1890 (Laws 1889–1890, p. 499), is hereby referred to and made a part of this statement of facts; the act of Congress of March 3, 1893 (27 Stat. 633, c. 209), is hereby referred to and made a part of this statement of facts; section 4621, 1 Ballinger's Ann Codes & St. of the state of Washington is hereby referred to and made a part of this agreed statement of facts; that section 3 of the act of Congress of February 28, 1891 (26 Stat. 794, c. 383), is hereby referred to and made a part of this agreed statement of facts; the act of Congress of August 15, 1894 (28 Stat. 305, c. 290), is hereby referred to and made a part of this statement of facts; the act of June 7, 1897 (30 Stat. 85, c. 3), is hereby referred to and made a part of this statement of facts; the act of Congress of May 31, 1900 (31 Stat. 229, c. 598), is hereby referred to and made a part of this statement of facts; the act of Congress of August 15, 1894 (28 Stat. 286, c. 290), and more especially that part thereof found at page 305, is hereby referred to and made a part of this statement of facts. And it is hereby by both parties hereto asked and prayed that the court, upon the foregoing agreed statement of facts, adjudge and determine the rights of the parties hereto, and construe, in so far as it is necessary in so determining, the effect of the laws herein cited and referred to.

Ried & Meade, for complainant.

E. E. Cushman, Asst. U. S. Atty., for defendant.

HANFORD, District Judge. It is my opinion that the patent issued by the United States government to the plaintiff, George Bird, is not a meaningless or deceitful document, which conveys no estate to the grantee, and I hold that it must be regarded and construed as a

bona fide and valid instrument, effective to fulfill the promise made to the grantee named therein as one of the Indians concerned in the treaty made by Gov. Stevens in the year 1854. By the treaty, Bird, as the head of a family, was entitled to have the quantity of land which the patent conveys allotted to him in severalty as a permanent home for himself and family, upon condition that he and the family should occupy and cultivate the same; and by the treaty he was promised not only the right to occupy and cultivate the land, but that the right should be exclusive, and inheritable by his heirs. The estate which the government promised to convey was not an absolute fee-simple estate, but was limited, so that he could not alienate the same without the consent of the state Legislature and of Congress, and the estate was defeasible in this: that it was subject to forfeiture if the allottee became a rover, and failed to occupy the land as a home. The patent by plain and positive words conveys to Bird the rights and the title which the treaty promised, and the grantee has in good faith accepted the land and the patent, and by erecting a dwelling upon the land and preparing a part of it for tillage, and by making his home thereon, and actual occupancy and cultivation of the land, he has fulfilled the conditions which entitle him to all the rights and benefits which the patent purports to convey to him. George Bird, although an Indian, has also, by adopting and practicing the habits of civilized life, and residing upon and cultivating the land allotted to him, fulfilled the conditions which, under laws enacted by Congress, entitle him to all the rights, privileges, and immunities of citizenship. He is a citizen of the United States, and entitled, equally with other citizens, to make a lawful use of his own property, and to prosecute and defend in the courts of this state and in the courts of the United States actions affecting his legal rights with respect to property, and to make contracts, not prohibited by law, including leases of the land in question for terms not exceeding two years. Having a complete vested estate in the land, and being endowed with the rights of citizenship, George Bird is under the protection of the guaranties of the Constitution of the United States, so that neither Congress nor the executive branch of the government can divest him of his property, nor deny to him the equal protection of the laws in a manner which would violate the constitutional rights of any other citizen. He cannot be prohibited from submitting for adjudication to the courts of this state disputed questions with respect to his ownership of the land conveyed by the patent, nor required to abide by the decision of any commission or agent of the executive branch of the government not authorized by law to exercise the judicial powers of the government, which takes from him and gives to others a part of the land which he and his family alone are entitled to possess, nor be subjected to the control of government functionaries in the matter of leasing his lands for a term not exceeding the time limit specified in his patent.

The several propositions above stated lead me to the conclusion that the heirs of Mary Bird, the deceased wife of George Bird, who are not his heirs, nor members of his family, have no right to nor interest in any part of the land conveyed by the patent, and that the agents of

the Interior Department cannot rightfully exercise any authority or control in the matter of leasing the land or receiving the rent, and that the decision of the Supreme Court of the state of Washington in the case of Bird v. Winyer, 24 Wash. 269, 64 Pac. 178, was a lawful adjudication by a court of competent jurisdiction of the questions which were at issue in that case between Bird and the heirs of his deceased wife.

Let a decree be entered in favor of the complainant, declaring him to be entitled to the exclusive possession of the 160 acres of land described in his complaint, and every part of it, and that the heirs of his deceased wife have no interest therein, nor right to possession of any part of it, and let an injunction issue against the defendant, Terry, forbidding him from molesting the plaintiff or his tenants in their occupation and use of the land, and from receiving any part of the rent for the same.