[No. 9314. Department Two. August 25, 1911.]

## LITTLE BILL or MAQUIQUI, *Appellant,* v. JOHN SWANSON et al., *Respondents.*[1]

INDIANS—LANDS—ACTIONS TO RECOVER—LIMITATION OF ACTIONS— BY DEATH. The written consent of an Indian allottee to the sale of his lands by commissioners, under 27 Stats. at L. 633, is not revoked by his death prior to the sale.

INDIANS—LANDS—TITLE OF ALLOTTEE—DESCENT—ADMINISTRATION —NECESSARY PARTIES—UNITED STATES. An Indian allottee of lands who, as a citizen of the United States, holds a patent subject to forfeiture if the lands were abandoned and restricting the right of alienation for a certain period and until removed by legislative act, has a base or qualified fee, which descends upon his death under the laws of descent of the state (made applicable by 24 Stats. at L. 388, § 5), and the United States is not interested in the devolution of title by inheritance and is not a necessary party to proceedings in probate administering the estate.

UNITED STATES — DEPARTMENTS — DECISION OF INTERIOR DEPART- MENT—CONCLUSIVENESS—INDIANS—LANDS — HEIRSHIP. Where lands were granted to an Indian by a patent subject to forfeiture if the lands were abandoned and restricting the right of alienation for a certain period and until removed by legislative act, and by 27 Stats. at L. 633, exercise of the power of alienation was provided for by sales and conveyances by a commissioner and trustee upon written consent of the allottee, and conveyance was made accordingly, the determination of the question of heirship of a deceased allottee, determined under rules and in the manner provided by the interior department in order to authorize a trustee's sale, is final and *res judicata.*

[1]Reported in 117 Pac. 481.

INDIANS—LANDS—ACTIONS TO RECOVER—LIMITATION OF ACTIONS—
RETROACTIVE STATUTES.   32 Stats. at L. 284, providing that the stat-
utes of limitations of the states shall apply to actions by any Indian
patentee, for the possession of lands patented in severalty, where
a deed thereof has been approved by the secretary of the interior,
the same as for the recovery of land patented to others than In-
dians, is retroactive, although the lands were not at the time sub-
ject to alienation, and the whole period of the limitations need not
run after the issuance of the deed by the trustee; especially in view
of the added proviso that "this act shall not apply to any suits
brought within one year from and after its passage;" hence an
action to recover lands in 1905 is barred where the patentee died
in 1888, at which time the land immediately went into possession
of one claiming as sole heir at law under a decree of the probate
court, to the knowledge of the plaintiff.

INDIANS—LANDS—ACTIONS TO RECOVER—LACHES.   The doctrine of
laches is not inapplicable to actions at law for the recovery of lands,
and bars an action commenced in 1905 by an Indian who had
severed his tribal relations and was a citizen of the United States,
and who claimed as heir of an original allottee from the govern-
ment who died in 1888, where defendant's predecessor in interest
was at that time adjudged the sole heir by the probate court, and
went into possession, and it appears that plaintiff knew of such
possession and claim of heirship and frequently visited there with-
out making any claim to the land at that time, nor later when the
interior department made a similar finding as to the heirship and
issued deeds upon the consent of such heir, the land having in-
creased in value from $90 to $600 per acre, and purchasers in good
faith having paid for the lands and made extensive improvements
thereon.

Appeal from a judgment of the superior court for Pierce
county, Clifford, J., entered April 20, 1910, upon findings in
favor of the defendants, after a trial on the merits before the
court without a jury, in an action of ejectment.   Affirmed.

E. D. Wilcox, Wesley Lloyd, and Jesse Thomas, for appel-
lant.

Bates, Peer & Peterson, for respondents.

CROW, J.—This action was originally commenced by Little
Bill or Maquiqui, against John Swanson, Hilma Swanson,
his wife, Anton Nelson, Bertha Nelson, his wife, Gustaf Peter-
son, Anna Peterson, his wife, Elizabeth Spott Sahms, Willie

Sahms, her husband, George Spott, and Edwin Eells, as guardian of George Spott, a minor, to recover twenty acres of land in Pierce county. From a judgment in favor of the defendants Swanson, Nelson, and Peterson, the plaintiff has appealed.

There is no material dispute as to the facts. On the evidence we conclude the findings made and entered by the trial judge must be sustained. From the evidence the following facts appear: The appellant, Little Bill, whose Indian name is Maquiqui, is of Indian birth. Since the year 1887 he has maintained no tribal relations, but has been a citizen of the United States. By virtue of a written treaty between the United States and certain bands of Indians, including the Puyallup tribe, made on December 26, 1854, the land here involved, together with other lands, was allotted to George Jacobs, a member of the Puyallup tribe, whose Indian name was Slowitson, but who was commonly known as George Jake. He took possession, and on January 30, 1886, the president of the United States issued to him, under the name of George Jacobs, a patent which contained restrictions on alienation. George Jake, who was a bachelor, died intestate on July 10, 1888, and left surviving him as his next of kin Little Bill, or Maquiqui, appellant herein, who was a brother of Betsy or Betholitza, the deceased mother of George Jake; and also left surviving him one Peter Spott, an Indian, his first cousin, who was the only son of a deceased sister of the deceased father of George Jake.

At the time of his death, George Jake was in peaceful possession of the land, holding under his patent. In March, 1890, Peter Spott, claiming to be sole heir at law of George Jake, caused a petition for administration upon his estate to be filed in the superior court of Pierce county. One Joseph Winyer was duly appointed and qualified as administrator. Due and regular administration was had, by which it was adjudged that Peter Spott, as next of kin and heir at law, was entitled to the entire estate. Immediately after the death

of George Jake, Peter Spott entered into the open, notorious, and adverse possession of the land, cleared the same, and erected buildings and made other improvements thereon. While he thus held and claimed the land, he was frequently visited by the appellant, Little Bill, who was aware of his possession and claim as sole heir at law of George Jake. On March 3, 1903, an act of Congress was approved (27 Stats. at Large, 633), providing for the appointment of three Puyallup Indian commissioners and defining their duties, which in part were:

"To select and appraise such portions of the allotted land as are not required for homes for the Indian allottees, . . . . and if the secretary of the interior shall approve the selections and appraisements made by said commission, the allotted land so selected shall be sold for the benefit of the allottees after due notice at public auction, at not less than the appraised value for cash, or one third cash and the remainder on such time as the secretary of the interior may determine, to be secured by a vendor's lien on the property sold; . . . . to superintend the sale of said lands, ascertain who are the true owners of the allotted lands, have guardians duly appointed for the minor heirs of any deceased allottees, make deed for the lands to the purchasers thereof, subject to the approval of the secretary of the interior, which deed shall operate as a complete conveyance of the land upon the full payment of the purchase money, and the whole amount received for the allotted land shall be placed in the treasury to the credit of the Indian entitled thereto, and the same shall be paid to him in such sums and at such times as the commissioner of Indian affairs, with the approval of the secretary of the interior, shall direct. . . . That the Indian allottees shall not have power of alienation of the allotted lands not selected for sale by said commission, for a period of ten years from the date of the passage of this act, and no part of the allotted land shall be offered for sale until the Indian or Indians entitled to the same shall have signed a written agreement consenting to the sale thereof, and appointing said commissioners, or a majority of them, trustees to sell said land and make a deed to the purchaser thereof; . . . The deeds executed by said commission shall not be valid until approved

by the secretary of the interior, who is hereby directed to make all necessary regulations to carry out the purposes of the foregoing provisions. . . ."

Under date of November 6, 1893, the department of the interior of the United States sent written instructions to the commissioners:

"To select and appraise such portions of the allotted lands as are not required for homes for the Indian allottees; then to obtain from the Indian or Indians entitled to the same, a written agreement signed and executed in the proper manner, consenting to the sale thereof at a sum not less than the appraiser's value and appointing and constituting you as commissioners, or a majority of you, trustees to sell said lands and make deed to the purchasers of the same. If Indian allottees or heads of families have died since the issuance of patents for lands selected and appraised for sale, you will determine the legal heirs of such allottee or head of family in accordance with the laws of the state of Washington; or, in other words, the true owners of the allotted lands; and have guardians duly appointed for the minor heirs of any deceased allottees, and obtain the consent of the heirs of twenty-one years and such guardians."

In 1895 the commissioners received further instructions, to the effect:

"That the commissioners were not required to go into the state courts in order to determine who are the heirs of these allottees, but to themselves apply the rule prescribed in their instructions, and when the 'heir' or 'true owner' is so ascertained, to obtain his consent to the sale of his allotment in the manner provided by the act . . . that the president would have the right to prescribe rules for the descent of these lands. The president speaks and acts through the heads of the several departments in relation to subjects which appertain to their respective duties."

James J. Anderson, John W. Renfroe, and Ross J. Alexander, duly appointed and qualified in the year 1893, as Puyallup commissioners, proceeded with the discharge of their duties, found and reported that George Jake died intestate in the year 1888; that he left Peter Spott, his first cousin, sur-

viving him as his next of kin and heir at law, who under the laws of Washington became the owner of the allotted and patented land of the decedent. This finding was later approved by the secretary of the interior. On January 1, 1899, Peter Spott, while in the exclusive possession of the land, died intestate, leaving surviving him a minor child named George Spott, and a widow named Elizabeth Spott, both Puyallup Indians, as his heirs at law, who continued in the occupation, possession, and exclusive use of the land until April 5, 1899, when it was sold to respondents herein as hereinafter stated. Elizabeth Spott later intermarried with· one Willie Sahms, and has since been known as Elizabeth Spott Sahms. On July 2, 1897, Clinton A. Snowdon was appointed sole commissioner of the lands of the Puyallup Indian reservation under the act of June 7, 1897 (30 Stats. at Large, 87.).

In the year 1898 and prior to his death, Peter Spott, as heir at law of George Jake, pursuant to the act of Congress of March 3, 1893 (27 Stats. 633), and the act of June 7, 1897 (30 Stats. at Large, 87, *supra*), signed, executed, and acknowledged an instrument in writing whereby he consented to the sale of the land and appointed Clinton A. Snowdon, then sole commissioner of the lands of the Puyallup Indian reservation, the trustee to sell the land at its appraised value and make deeds to the purchasers, all subject to the approval of the secretary of the interior. Such written consent was thereafter approved by the secretary of the interior. On January 18, 1901, the secretary of the interior, in answer to an inquiry from Clinton A. Snowdon, instructed him as follows:

"Where allottees and true owners of Puyallup lands have executed their consents of sale, the same having been approved by the secretary, it has been the practice of the department to continue the sale of the lands covered thereby in the case of the death of an allottee or true owner and to distribute the funds arising from such sale to his or her heirs. The office and the department have regarded these written consents

as remaining in full force and effect upon the decease of the
Indian executing the same—and further, that they are, as
above indicated, in the nature of an agreement or contract to
be carried out for the sole benefit of his heirs in case of his
decease. . . These lands are sold under the provisions of the
act of Congress, March 3, 1893, and not under the laws of
the state of Washington. . . . It is for the department to
pass upon the sufficiency of consents and not the courts of the
state of Washington."

In pursuance of the written consent executed by Peter
Spott, and in compliance with his instructions from the de-
partment of the interior, Clinton A. Snowdon, as commis-
sioner and trustee, advertised, and thereafter in due course
sold and conveyed the land, in three separate tracts, to the
respondents Swanson, Nelson, and Peterson, for the aggre-
gate sum of $1,800, at the rate of $90 per acre, which was
then a fair and reasonable value. The respondents imme-
diately entered into open, exclusive, and notorious possession
under their deeds, claiming title under the original patentee,
George Jake, under Peter Spott as his sole heir at law, so
adjudged by the superior court of Pierce county, and deter-
mined by the finding of the commissioners approved by the
secretary of the interior, and also under Peter Spott's
written consent and the approved deeds executed by Clinton
A. Snowdon, commissioner and trustee.

At the time respondents purchased, they had no notice or
knowledge of the death of Peter Spott, nor did they learn of
the same until after the commencement of this action. They
purchased in good faith, paid a fair consideration, made no
investigation as to the death of Peter Spott, his heirs, or the
members of his family, but relied exclusively upon the rep-
resentations of commissioner Snowdon and of the department
of the interior, and the regularity of their proceedings. Re-
spondents have since made permanent improvements, some of
them since the commencement of this action, as follows: Re-
spondent Swanson, who purchased eight acres, has made
permanent improvements of the reasonable value of $1,850;

respondent Nelson, who purchased four acres, has made permanent improvements of the reasonable value of $1,400; and respondent Peterson, who purchased eight acres, has made permanent improvements of the value of $2,500. The land, together with the improvements thereon, was, at the date of the trial, of the reasonable value of $900 per acre, and was, at the time of the commencement of this action, of the reasonable value of $600 per acre.

Since purchasing the land, respondents have paid all taxes levied thereon. Appellant did not assert or make any claim to any of the land as heir at law of George Jake or otherwise, until about the time of the commencement of this action in April, 1905. George Spott, minor son and heir at law of Peter Spott, died intestate, during the pendency of this action, leaving his mother, Elizabeth Spott Sahms, as his only heir at law. She, by cross-complaint filed herein, claimed the land as heir at law of her deceased husband, Peter Spott, and her deceased son, George Spott, on the theory that the sale made to respondents by Clinton A. Snowdon after the death of Peter Spott was void; that the written instrument of consent executed by Peter Spott had been revoked by his subsequent death, and that Peter Spott was the sole heir at law of George Jake, deceased. After filing her cross-complaint, all of her alleged rights and interests were transferred to the appellant, Little Bill, and all defendants, other than the respondents Swanson, Nelson, and Peterson and their respective wives, were thereupon dismissed from this action. The appellant, Little Bill, now claims all title or interest that may have been held by Peter Spott or his heirs at law, on the theory of a revocation of Peter Spott's written consent by his death prior to any sale by Snowdon, trustee. He also prosecutes his original claim as heir at law of George Jake, deceased.

The trial court concluded the appellant has been guilty of inexcusable neglect and laches in failing to assert his claim to the land; that his action has been barred by the statute of limitations; that the questions sought to be litigated herein

have been once determined by the department of the interior of the United States; that its judgment has not been appealed from or modified, is in full force and effect, and is *res adjudicata;* that this action should be dismissed; that the respondents' title should be quieted, and that the several deeds of Snowdon as commissioner and trustee conveyed an absolute fee simple title.

The above statement, made with much detail and at considerable length, is sufficient without argument to sustain the conclusions of law and final decree made and entered by the trial court. The appellant insists, (1) that laches, being an equitable defense, cannot be interposed in this action at law, and that in any event laches has not been shown; (2) that the action has not been barred by any statute of limitations; (3) that the superior court of Pierce county acted without jurisdiction in the administration proceedings; (4) that the decision of the secretary of the interior approving the finding of heirship made by the commissioners was without jurisdiction and void; (5) that the written consent executed by Peter Spott, appointing Clinton A. Snowdon trustee, was revoked by the death of Peter Spott, which occurred prior to the execution of any deeds by Snowdon, and that such deeds are void. The contention last mentioned is made in support of any interest appellant may have acquired during the pendency of this action from the heirs of Peter Spott, deceased. The decision of this court in *Prichard v. Jacobs,* 46 Wash. 562, 90 Pac. 922, refutes appellant's contention that the written consent executed by Peter Spott was revoked by his death. Further discussion of that point is unnecessary.

By the act of Congress of February 8, 1887 (24 Stats. at Large, 388), Little Bill and George Jake became citizens of the United States. 19 Opinions Attorney General of U. S. 255. George Jake was then holding land allotted to him under a patent identical in its terms, provisions, and restrictions upon alienation, with the patent considered by this

court in *Guyatt v. Kautz*, 41 Wash. 115, 83 Pac. 9. We there said:

"After a careful consideration of the terms of said patent, the sixth article of the Omaha treaty, the beneficial results sought to be attained thereby, and in the light of the authorities, we conclude that the patent set forth in the complaint conveyed to Napoleon Gordon a base, or qualified, fee simple title, subject to temporary restrictions as to alienation, which might thereafter become an absolute fee simple title. The qualifications subjoined to said base fee resulted from the stipulation of said sixth article of the Omaha treaty, that if said patentee or his family should neglect to till the soil or should rove from place to place, the president might cancel said assignment, even though patent had issued. . . . Although, as intimated in *Bird v. Winyer, supra*, the only immediate practical benefit arising from the title conveyed was to secure to the patentee and his family possession and use of said land until such time as the restrictions on alienation should be removed by the legislature of the state of Washington and by act of Congress, yet the estate actually conveyed was one of inheritance, being a base fee simple title, temporarily restricted as to alienation, and subject to forfeiture in the event of the patentee or his family failing to till the soil or upon their returning to nomadic habits of life."

By § 5 of the act of Congress of February 8, 1887 (24 Stats. at Large, 388), *supra*, the laws of descent of Washington were made applicable to allotted and patented Indian lands in this state. George Jake held an inheritable estate in the land on January 10, 1888, when he died intestate. It then devolved upon some forum to settle the question of inheritance and determine who were his heirs at law. The respondents contend the proper forum was the superior court of Pierce county, which they assert had jurisdiction both of the land and the person. In support of this contention they cite *Bird v. Terry*, 129 Fed. 472; *Bird v. Winyer*, 24 Wash. 269, 64 Pac. 178; *Guyatt v. Kautz*, 41 Wash. 115, 83 Pac. 9; *Frazee v. Piper*, 51 Wash. 278, 98 Pac. 760; *Wa-La-Note-Tke-Tynin v. Carter*, 6 Idaho 85, 53 Pac. 106. These authorities tend to sustain respondents' contention, as to which

there could be no question were it not for the point raised by appellant that the United States being interested would be a necessary party to the proceeding or action, and that it is not subject to the jurisdiction of a state court.

Unquestionably when the United States has, by patent or otherwise, reserved *title* in itself for the benefit of an Indian allottee, it would, in the absence of legislation to the contrary, become a necessary party to any action or proceeding involving such title, and an adjudication by a state court would not be binding. It was so held in *McKay v. Kalyton*, 204 U. S. 458. That case, however, is not pertinent here, as the entire argument in the opinion is predicated on the fact that the title then under consideration remained in the United States government, which held it in trust, and that a subsequent patent would in due season become necessary to convey the same to the allottee. It, therefore, became manifest that no action of the courts of the state of Oregon affecting such title held by the United States could be binding unless the United States had by statute subjected itself to the jurisdiction of such tribunals, which it had not done. No such condition as to the title exists in this action. The patent held by George Jake is vitally different from the one there under consideration, in that neither the fee nor the title was retained by the United States. On the contrary, title passed to George Jake, the patentee, subject to the possibility of defeat by a roving life, and subject also to restrictions upon alienation. The United States had no interest in the devolution of the title by inheritance, and was not a necessary party to any action or proceeding in which the inheritance might be determined.

Appellant further contends the United States retained, as trustee for the patentee George Jake, some power of alienation; that to exercise such power it was necessary to determine who were his heirs at law; and that the United States would be a necessary party to the proceeding where the question of heirship was an issue. Conceding, without deciding,

this contention to be well taken, it will be noticed that by the act of March 3, 1893 (27 Stats. at Large, 633, *supra*), the United States provided for the exercise of such power of alienation, and also provided for a method of conveyance of these lands through the Indian commissioner and trustee, acting upon the written consent of the allottee. By the same statute and subsequent written instructions, it also directed that the questions of ownership and heirship should be determined by the commissioners, and that their decision should be reported to and approved by the secretary of the interior. It is conceded this was done, that no appeal has been taken from the finding, and that it stands without modification or change. The decisions of the different departments of the general government of the United States, on questions of fact within the scope of their authority, are everywhere conclusive except on appeal within the department. *Marquez v. Frisbie*, 101 U. S. 473; *Wiseman v. Eastman*, 21 Wash. 163, 57 Pac. 398. Without regard, therefore, to the question of the jurisdiction of the state court, we conclude the trial judge did not err in holding that the question of heirship, sought to be litigated herein, has been finally determined by the department of the interior, and that its judgment is *res adjudicata*.

From what has been heretofore said, it necessarily follows the trial court was correct in its conclusion that the appellant's action has been barred by the statutes of limitations of this state. Appellant contends no statute of limitations of this state is applicable, as the patented land could not be alienated by the Indian patentee or owner at any time prior to the year 1903, when the restrictions upon alienation ceased. While it is true that the United States, by the act of March 3, 1893 (27 Stats. at Large, 633, *supra*), continued the restriction upon the right of alienation until March 3, 1903, it nevertheless, by an act which took effect while such restrictions on alienation still existed, provided that, if the patentee failed to assert any alleged right he might claim, he

should, under certain circumstances, lose such right under the statutes of limitations. See act of March 31, 1902, 32 Stats. at Large, 284. Section 1 of the act reads as follows:

"That in all actions brought in any state court or United States court by *any patentee, his heirs, grantees, or any person claiming under such patentee, for the possession* or rents or profits of lands patented in severalty to the members of any tribe of Indians under any treaty between it and the United States of America, *where a deed has been approved by the secretary of the interior to the land sought to be recovered,* the statutes of limitations of the states in which said land is situate shall be held to apply, and it shall be a complete defense to such action that the same has not been brought within the time prescribed by the statutes of said state *the same as if such action had been brought for the recovery of land patented to others than members of any tribe of Indians.*"

This statute seems plain in its terms. Appellant, however, contends that it is necessary for the whole period of limitations to have run after the issuance of the deeds executed by Snowdon, trustee. The portions of the statute which we have italicized disclose an intention to make it retroactive, applicable against any patentee or any successor in interest such as appellant claims to be. That the application of this statute was intended to be retroactive is further shown by its second section, which reads as follows:

"That this act shall not apply to any suits brought within one year from and after its passage."

This section secured to the claimant a reasonable time for bringing action in case the full period of limitations had already expired. George Jake died in 1888. Peter Spott went into immediate possession, claiming to be his sole heir at law. His possession was succeeded without interruption by that of his heirs at law and by that of the respondents holding under their deeds. Little Bill knew of the death of George Jake, of the possession and claim of Peter Spott and his heirs, of the appointment of the commissioners; but did

not commence this action until 1905, although he was at all times a citizen of the United States, and the courts were open to him. Clearly he is barred by the statutes of limitations. Rem. & Bal. Code, §§ 156, 786, 788.

We further hold, irrespective of the statutes of limitations, the trial court was right in its conclusion that the appellant has been guilty of inexcusable neglect and laches, sufficient to preclude him from any recovery herein. In response to the defense of laches, appellant contends the doctrine of laches is confined to courts of equity where it is recognized at all, and that it has no application to this action which was commenced as an action at law. In *Peterson v. Philadelphia Mtg. & Trust Co.*, 33 Wash. 464, 74 Pac. 585, it was held that equitable defenses may be interposed in an action commenced as an action at law, and that when the equitable defense has been set forth and pleaded, the cause may be first tried as one of equitable cognizance. This rule was afterwards affirmed in *Lindley v. McGlauflin*, 57 Wash. 581, 107 Pac. 355. The defense was properly pleaded and considered.

If there ever was an action in which the equitable defense of laches should be enforced, this is such action. Peter Spott claimed to be the sole heir of George Jake, deceased, took and held exclusive possession of the land under such claim, made improvements, was adjudged to be such heir by the superior court of Pierce county, and by the interior department of the United States, and executed his written consent to Clinton A. Snowdon, trustee. The respondents purchased the land in good faith for a valuable consideration, relying on all of these facts, and have made valuable improvements. The land has never been in appellant's possession, but has been held continuously since the year 1888 by others whose claims were adverse to him. When this action was commenced, it had advanced in value from $90 to $600 per acre. Little Bill knew of George Jake's death and that Peter Spott had taken possession under a claim of heirship. He lived less than twenty miles from the land and frequently visited Peter

Spott.   He made no claim of heirship, but remained quiet and inactive while respondents were making their purchases, payments, and improvements.   He must have known, or should have known, they were in possession under color of title in good faith, claiming under their deeds.   Yet he took no action until the year 1905, when he instituted this suit. In *Ferrell v. Lord*, 43 Wash. 667, 86 Pac. 1060, we said:

"Where a case is of purely equitable cognizance, in the application of the doctrine of laches courts of equity act upon their own inherent doctrine of discouraging, for the peace of society, ancient demands, and refuse to interfere where there has been gross laches in prosecuting the claim or long acquiescence in the assertion of adverse rights. *In such cases the statute of limitations does not necessarily govern the court in the application of the doctrine of laches*, 9 Ballard, Law of Real Property, § 757; *Gay v. Havermale*, 30 Wash. 622, 71 Pac. 190; *Boyer v. East*, 161 N. Y. 580, 56 N. E. 114, 76 Am. St. 290; *Galliher v. Cadwell*, 145 U. S. 368, 12 Sup. Ct. 873, 36 L. Ed. 738; *Penn. Mut. Ins. Co. v. Austin*, 168 U. S. 685, 18 Sup. Ct. 223, 42 L. Ed. 626.   There is no inflexible rule controlling the application of the defense of laches.   The facts and circumstances of each case must govern courts of equity in permitting said defenses to be made.   The authorities show that, while lapse of time is one of the elements to be considered in applying this equitable defense to stale claims, it is only one, and that it is not necessarily the controlling or most important one.   Regard must be had to all of the facts and surrounding circumstances, and if, when carefully considered, they do not appeal to the conscience of the chancellor, on behalf of a claimant, the defense of laches should be allowed."

In *Schrimpscher v. Stockton*, 183 U. S. 290, the supreme court of the United States said:

"Conceding, but without deciding, that so long as Indians maintain their tribal relations they are not chargeable with laches or failure to assert their claims within the time prescribed by statutes, as to which see *Felix v. Patrick*, 145 U. S. 317, 330; S. C., 36 Fed. Rep. 457, 461; *Swartzel v. Rogers*, 3 Kansas 374; *Blue Jacket v. Johnson Co.*, 3 Kansas 299; *Wiley v. Keokuk*, 6 Kansas 94; *Ingraham v. Ward*, 56 Kan-

sas 550, they would lose this immunity when their relations with their tribe were dissolved by accepting allotments of lands in severalty."

Statutes of the United States providing for allotment of Indian lands and patents, with restrictions upon alienation, were enacted to protect Indians from schemes and fraudulent practices of white men, not to aid in the unconscionable and inequitable enforcement of stale claims, to the injury of innocent parties who in good faith, for value, and by regular procedure, have purchased allotted Indian lands through the interior department of the United States. Appellant has at all times since the death of George Jake been a citizen of the United States. Courts of justice have been open to him for the assertion and protection of his rights. Should he now be awarded a recovery in this action, the result would be that the very statutes enacted to prevent frauds would be an aid to fraud. Courts of equity will not countenance the prosecution of stale, unjust, and inequitable claims.

The judgment is affirmed.

DUNBAR, C. J., MORRIS, and CHADWICK, JJ., concur.

ELLIS, J., took no part.