Silverman v. Larson.

No. 27,392.

AMELIA SILVERMAN, *Appellant,* v. MINNIE LARSON et al., *Appellees.*

(259 Pac. 707.)

SYLLABUS BY THE COURT.

WILLS—*Construction—After Acquired Property Passed by Residuary Clause.* In a will executed several years before his death, the testator devised certain tracts of real estate and gave certain personal property to named beneficiaries, and in a clause of the will devised and gave all the rest, residue and remainder of his property to certain designated persons, share and share alike. He acquired other property after the will was made. *Held,* the residuary clause clearly and manifestly showed the intention of the testator to be that he should not die intestate as to any of his property, and that the will passed the after-acquired property the same as if it had been held and possessed by him at the time of making the will.

Appeal from Saline district court; DALLAS GROVER, judge. Opinion filed October 8, 1927. Affirmed.

*Z. C. Millikin* and *Alex H. Miller,* both of Salina, for the appellant.

*H. C. Tobey,* of Salina, for appellee Todie McCormick; *Thomas L. Bond,* of Salina, of counsel.

The opinion of the court was delivered by

JOHNSTON, C. J.: This action was brought to obtain a construction of the will of August Ziebell and to determine the rights of plaintiffs and defendants in the property owned by him at his death.

On August 3, 1917, August Ziebell had six living children—five daughters, Amelia, the plaintiff, Hilma, Alma, Minnie and Ellen, and one son, August C. Ziebell. On that date he conveyed a tract of land to Hilma, another to Alma, and still another to his son, August C. Ziebell. Two days later he executed a will (not the one in question) devising to his daughters, Ellen Carlson, Minnie Larson and Amelia Silverman, a tract of real estate, share and share alike. He devised to his son, August C., other tracts of land, and also gave him his farming implements and all his personal property, charged, however, with the payment of his funeral expenses, including doctor's bill, nurse's bill, and all other expenses incident to his last sickness. The will contained a provision that:

"All the rest, residue and remainder of my property I give and devise to my

Wills, 40 Cyc. pp. 1044 n. 87, 1045 n. 91, 1386 n. 85, 1388 n. 90, 1409 n. 4, 1414 n. 26, 1556 n. 96, 1557 n. 98, 1564 n. 58, 1568 n. 80; 28 R. C. L. 235.

children, namely: Ellen Carlson, Minnie Larson, Amelia Silverman, August C. Ziebell, Alma Ziebell, and Hilma Ziebell, share and share alike."

He appointed and designated his son, August C. Ziebell, and his daughter, Alma Ziebell, executors of the will and expressed the wish that they should do so without compensation and without bond. The material facts to the controversy following the making of the deeds and the execution of the will mentioned have been found by the trial court, and are as follows:

"5. After the making of the conveyances mentioned in finding No. 2 and of the will dated July 5, 1917, and in the month of August, 1918, said August Ziebell and his daughter, Amelia, the plaintiff herein, became alienated and estranged from each other on account of a slip in conduct on the part of said Amelia, while unmarried and living in Denver, which resulted in the birth to her of a son, the same being the defendant Todie McCormick, now aged about 15 years. The boy Todie was about 5 years of age and being cared for by his aunt, Minnie Larson, one of the defendants herein, when he first became known to said August Ziebell. When said August Ziebell first saw the boy he asked said Minnie whose child he was and was informed that he was Amelia's child. Two or three days thereafter said August Ziebell made and published the will in question, which is in words and figures as follows, to wit:

"'LAST WILL AND TESTAMENT OF AUGUST ZIEBELL OF ASSARIA, SALINE COUNTY, KANSAS.

"'I, August Ziebell, of Assaria, Saline county, Kansas, being of full age, of sound mind and disposing memory, do make, publish and declare this my last will and testament.

"'First: I give, devise and bequeath to my daughters, Ellen Carlson, Minnie Larson and to my grandson, Todie McCormick, the following-described real estate, to wit: The south half of the northeast quarter of section thirty-one, township fourteen, range three, west of the sixth principal meridian, in Saline county, state of Kansas, share and share alike.

"'Second: I give, devise and bequeath to my son, August C. Ziebell, the following real estate, to wit: The north half of the northeast quarter of section thirty-one, township fifteen, range two, west of the sixth principal meridian, and the northwest quarter of the northwest quarter of section thirty-two, township fifteen, range two, west of the sixth principal meridian, all in Saline county, Kansas.

"'Third: I give and devise to my son, August C. Ziebell, all of my farming implements and tools, including harness and tackle, buggies and wagons, provided it is my will, and I hereby direct that my said son, August C. Ziebell, shall be charged with and shall be required to pay all my funeral expenses, including doctor's bills, nurse's bills, and all expenses incident to my last sickness.

"'Fourth: All of the rest, residue and remainder of my property I give and devise to my children, namely, Ellen Carlson, Minnie Larson, August C. Ziebell, Alma Ziebell and Hilma Ziebell, and to my grandson, Todie McCormick, share and share alike.

"'Fifth. I hereby appoint and designate my son, August C. Ziebell, and son-in-law, Olof Larson, executors of this, my last will and testament, and it is my wish that they execute this, my last will, without compensation, and without bond, and I hereby revoke all former wills.

Silverman v. Larson.

" 'In witness whereof, I have hereunto set my hand this 21st day of August, 1918.                                                            his
" 'August  ✕  Ziebell.
                                                                    mark

" 'Signed, published and declared by the said August Ziebell, testator, as and for his last will and testament, in the presence of us, we each signing the same as the witnesses of the said will in the presence of each other, and in the presence of the testator, at his special instance and request.
" 'R. A. Lovitt,
" 'John J. Eberhardt.'

"6. The property conveyed by said August Ziebell to his daughters, Hilma and Alma, and the property conveyed and specifically devised to his son, August C., constituted the largest part of the property owned by said August Ziebell at the time he made said conveyances and the will dated August 21, 1918, said real estate being approximately of the value of $41,000. The 80 acres of land devised to Minnie Larson, Ellen Carlson and Todie McCormick is worth about $6,000. The said 80 acres constituted all the remainder of the real estate owned at that time by said August Ziebell.

"7. Not long after testator first saw the boy, Todie, he took him into his home and kept him there, treating him with great kindness and affection. He made a number of money presents to the boy. He opened a bank account for him in a bank at Assaria and from time to time added to the account so that the boy's bank account at the time of the death of August Ziebell was between $1,600 and $1,700.

"8. In the month of December, 1918, and after the execution of the will dated August 21, 1918, August C., Hilma and Alma Ziebell died, unmarried and intestate, and leaving no children. None of them had made any conveyance of any of the said real estate conveyed to them by said August Ziebell, or any part thereof, or made any other disposition of the same or any part of their interest therein or-thereto.

"9. As time went on the relations between August Ziebell and the plaintiff became more friendly. Plaintiff, whose home was in Denver, Colo., visited her father about once a year, the father paying all the traveling expenses of such visits. After the death of August C., Hilma and Alma, the rents and profits realized from the real estate owned by testator, including that which returned to him through the death of August C., Hilma and Alma, were divided among Ellen, Minnie, Amelia and Todie, Ellen and Minnie each receiving one-third of the same and Amelia and Todie each one-sixth.

"10. Soon after the death of August C., Hilma and Alma, the plaintiff received from her father a $100 liberty bond and war stamps aggregating $400 in value. She has also received the sum of $2,681.50 from the rents and profits of the real estate. Testator also gave plaintiff a number of Christmas presents during the last years of his life. Whenever said Ziebell gave any money or Liberty bonds to Amelia he also gave money and Liberty bonds to Minnie, Ellen and Todie. And to each of his said daughters on the occasion of her marriage, he gave a wedding present of $1,000.

"11. The value of all of the real estate owned by said August Ziebell at the time of his death was about $47,000. The value of said real estate in 1918,

when the will in question was made, was about $65,000. Ziebell was also the owner of a considerable amount of personal property, the value of which has not been disclosed by the evidence.

"12. On several occasions after the death of August C., Hilma and Alma, said Ziebell, referring to the real estate he would leave at his death, made the statement: 'The land will have to be sold; they will never agree how it shall be divided.'"

Based on these facts, the court announced the following conclusions of law:

"1. The changes in the conditions and circumstances of the testator, August Ziebell, after the making of the will dated August 21, 1918, did not operate as a revocation of said will. And said testator did not, at any time, by any act or statement, manifest his intention to revoke said will.

"2. Under the will of August Ziebell dated August 21, 1918, the devisees, Ellen Carlson, Minnie Larson and Todie McCormick, take, share and share alike, all the estate left by the said testator, August Ziebell."

About six and one-half years after the last will was made August Ziebell died, at about the age of eighty-seven years. While the testator was advanced in years when the will under consideration was made, no question is raised as to his testamentary capacity, there is no charge of fraud or undue influence in the execution of the will, nor is any claim made that there was noncompliance with any of the formalities or statutory requirements essential to a valid will. The principal question advanced by the plaintiff relates to the disposition of what is called after-acquired property, which it is insisted did not pass under the residuary clause of the will. As already shown, three children to whom conveyances of land were made on July 3, 1917, died intestate, unmarried and without issue during the life of August Ziebell, and it is conceded that, his wife being dead, he inherited these lands and was the owner of the same at the time of his death. It will be observed that the only difference in the last will and the earlier one, which had been executed more than a year before, was the elimination of his daughter, Amelia, and the substitution of her son, Todie McCormick, who was born when Amelia was unmarried, and also the substitution of Olof Larson, the husband of Minnie, as executor in place of Alma. It will be seen that the residuary clause mentioned all the children except Amelia and substituted for her the grandson of the testator, Todie McCormick.

The controversy is between Amelia and her son, Todie, who was brought to the Ziebell home when he was about five years of age, and is now about sixteen years of age. Amelia insists that although

she was left out of the will, it did not cover or operate to pass property acquired after the will was executed. Reference is made to a statutory provision which reads:

"Any estate or interest in lands or personal estate or other property acquired by the testator after the making of his will, shall pass thereby in like manner as if held or possessed at the time of making the will, if such shall clearly and manifestly appear by the will to have been the intention of the testator." (R. S. 22-257.)

It is contended that the statute does not pass after-acquired property regardless of the testator's intention, but in effect says that such property shall not pass unless an intention to pass shall affirmatively appear. It is argued that the statute implies that such property only passes where the will itself shows clearly an intention of the testator to pass future-acquired property; that the will may or may not carry such subsequent property, and that the burden is on those claiming such intention to show that it exists as a fact. Plaintiff cites *Wright v. Masters,* 81 Ohio St. 304, in which the court, interpreting a like statute, said:

"The language of this statute clearly indicates its limitation, and shows it to have been the purpose of the legislature to restrict its operation to those cases where the intent of the testator to pass after-acquired property is clearly and sufficiently disclosed in his will." (p. 312.)

In that case there was no residuary clause disposing of all the residue of the testator's property. Does the will involved here disclose an intent of the testator to pass after-acquired property clearly and sufficiently?

In the will the testator devises particular pieces of real estate to persons named and gives personal property to another and then states that "all the rest, residue and remainder of my property, I give and devise to my children and grandson (naming them), share and share alike."

It is very manifest from the terms of the will that the testator did not intend that he should die intestate as to any of his property, however and whenever it may have been acquired. Aside from the presumption of law of an intention on the part of the testator not to die intestate as to any of his property, there is the residuary clause in the instrument containing language clear and comprehensive purporting to dispose of all the property owned by him when the will became effective. That clause expresses, we

think, in unequivocal terms the intention of the testator to dispose of his entire property, whether acquired before or after the will was executed. His intention as expressed in the will must control. We have said:

"A canon of construction to which all other rules are subordinate is that the intention of the testator as gathered from all parts of the will is to be given effect," etc. (*Brown v. Brown,* 101 Kan. 335, 166 Pac. 499.)

Under the common law the testator could not devise real estate acquired after the will was made, but that rule was abrogated by the statute quoted, which declares that real and personal property acquired after the making of the will shall pass the same as that held or possessed when it was made where from the will it clearly appears to have been the intention of the testator. Of course, if the will shows an intention to restrict the gift to property less than the entire propery of the testator or only to property owned by him when the will was made, it should be given effect, but where a clause of the will declares a purpose to bequeath and devise all of the property of the testator, there can be no doubt of his intention that the will, which speaks from the testator's death, covered all property owned by him at that time. The rule is not a new one in this state, and in *Durboraw v. Durboraw,* 67 Kan. 139, 72 Pac. 566, where a will contained the statement that it bequeathed and devised all real estate and personal property of every description, wherever situate, and where the matter of after-acquired property was involved, it was held that the will manifestly indicated an intention to pass subsequently acquired real estate. In the opinion the effect of the statute was considered and among other things it was said:

"Besides this, a will, it was said, 'speaks from the death of the testator.' (*Haley v. Gatewood,* 74 Tex. 281, 12 S. W. 25.) The testator makes his will in view of that circumstance. He understands that, until his decease, the will is ambulatory, and that he may buy and sell at pleasure, but that, being written in anticipation of that event, his language must necessarily be referable thereto. Hence the will must be so construed as to prevent intestacy with reference to any portion of the decedent's estate, if that can reasonably be done." Citing many cases. (p. 143.)

It was followed by the declaration:

"The conclusion seems irresistible that the devisor intended that he should not die intestate as to any item of his property, and hence that all the real estate he died seized of should be disposed of by the will." (p. 144.)

In *Johnson v. White,* 76 Kan. 159, 90 Pac. 810, where the will contained a residuary clause, the same rule was applied. In *Noel v. Noel,* 109 Kan. 440, 199 Pac. 459, the will provided that the testator gave all of his property, both personal and real estate, to a certain beneficiary, and it was held that the will clearly manifested an intention to pass after-acquired property in the same manner as if held and possessed when the instrument was executed.

The question was considered at length in *Kirkpatrick v. Kirkpatrick,* 112 Kan. 314, 211 Pac. 146, and after a discussion of the rule of the common law respecting the subject, consideration was given to the statute indicating a change of policy, holding that its effect was to abrogate the common-law rule. It was said:

"There is no policy in this state to keep any class of property in a favored channel of inheritance as against a will, and when there is a will the presumption is against intestacy. The rule that a lapsed devise, in a will with a residuary clause, was not disposed of and went to the heir, contravened the intention of the testator, compelled him to die intestate with reference to a portion of his property when he had indicated a contrary desire, and is not in harmony with the policy underlying our law. The result is, this court could not, if called on to do so, state a satisfactory reason for making a present-day distinction between the destination of a lapsed devise and of a lapsed legacy, in a will containing a residuary clause applicable to each." (p. 329.)

The will itself, which is controlling, clearly and manifestly discloses an intention by the testator that all property owned by him, whether acquired before or after the execution of the instrument, should pass to the beneficiaries designated. That being the result there was no intestate estate and no lapsed or ineffectual bequests. The court, after considering the terms of the will as well as the oral testimony, correctly held that the plaintiff had no right, title or interest in any of the property owned by the testator at the time of his death.

The judgment is affirmed.