ESTATE OF ZINK: SATTELL, Appellant, v. BRENNER, Executor, and others, Respondents.

*January 10—February 6, 1962.*

For the appellant there was a brief and oral argument by *Jack Sattell* of Hales Corners.

For the respondents there was a brief by *Lowry, Hunter & Tikalsky* and *Robert T. McGraw,* all of Waukesha, and oral argument by *Mr. Richard N. Hunter* and *Mr. McGraw.*

GORDON, J.   The appellant contends that she is entitled to share equally with her three sisters in the real estate acquired by her father after he had executed his will. These three arguments are advanced in support of her contention:

(a) By the terms of the will and the circumstances surrounding its execution it is clear that the testator intended to divide his estate equally among his four daughters; (b) only the property owned by the testator on April 7, 1959, should be distributed under the will because that was the date on which he was declared incompetent; and (c) the testator's intent to pass after-acquired real estate does not manifestly appear by the will as required by sec. 238.03, Stats.

The first two points are readily disposed of against the petitioner, but the third contention raises an issue which this court has not heretofore resolved.

### Equal Shares Under the Will.

There is nothing about the circumstances which are reflected in the evidence to warrant a conclusion that George Zink intended to treat his four daughters equally in the disposition of his estate. There is, indeed, proof that he was on good terms with the petitioning daughter, but it does not follow that his testamentary plans necessarily contemplated her receiving an equal share of his assets. The language of the will clearly contradicts the appellant's claim for an equal share. It even provides a reason for not giving her an equal share; in paragraph 2 of the will the testator stated, after making a specific bequest of $6,000 to the petitioner:

"I have intentionally not made any larger provision for her for the reason that I have loaned to her at various times sums of money . . . which she and her husband have failed and neglected to repay to me."

In our opinion the will is clear and unambiguous and a construction which proposes that this testator intended equal shares for his four daughters would do violence to the language of the will. In *Will of Peters* (1937), 223 Wis. 411, 413, 270 N. W. 921, this court stated:

"While it is true that a will must be construed in accordance with the evident intention of the testator, when that

intention is clearly expressed in appropriate language the instrument admits of no construction." See also *Estate of Gray* (1953), 265 Wis. 217, 226, 61 N. W. (2d) 467.

Even if the will results in inequality, the court cannot "distort its construction to accomplish its own idea of what is equitable." *Will of Richter* (1934), 215 Wis. 108, 111, 254 N. W. 103.

### *The Guardianship of the Testator.*

A petition was submitted to the Waukesha county court on March 24, 1959, seeking the appointment of a guardian for George Zink on the ground that he was mentally disturbed and unable to manage his property. On April 7, 1959, he was formally adjudged incompetent and a guardian was appointed. He remained under this guardianship until his death.

The fact that George Zink was incompetent to manage his property does not mean that he lacked testamentary capacity. The general test for such capacity has been expressed by this court as follows:

". . . whether testator had sufficient active memory to comprehend, without prompting, the condition of his property, his relations to those who might be his beneficiaries, and to hold these things in mind long enough to perceive their relations to each other and to be able to form some rational judgment in relation to them." *Will of Williams* (1950), 256 Wis. 338, 346, 41 N. W. (2d) 191.

The infirmities which may accompany old age do not necessarily incapacitate a person from making a valid will. A person who is under a guardianship may well have many rational intervals during which time he may be capable of executing a valid will. *Estate of Dobrecevich* (1961), 14 Wis. (2d) 82, 86, 109 N. W. (2d) 477; *Will of Ganchoff* (1961), 12 Wis. (2d) 503, 509, 107 N. W. (2d) 474; *Estate of Schalla* (1957), 2 Wis. (2d) 38, 44, 86 N. W. (2d) 5; *Will of Slinger* (1888), 72 Wis. 22, 26, 37 N. W. 236.

## The Real Property Acquired After the Execution of the Will.

At common law, real estate which was received by the testator after the date of his will could not pass thereunder. A will only passed that realty of which the testator was seised at the time of the making of his will. Most jurisdictions have modified this common-law rule so as to enable a testator to pass after-acquired realty, provided there is the intention so to do. Anno. 75 A. L. R. 474, 484–507; 3 American Law of Property, p. 580, sec. 14.9; 96 C. J. S., Wills, p. 156, sec. 756 c.

The statutes accomplishing this modification of the common law have taken various forms, the Wisconsin statute being sec. 238.03, which provides as follows:

"Any estate, right, or interest in lands acquired by the testator after the making of his will shall pass thereby in like manner as if possessed at the time of making the will if such shall manifestly appear by the will to have been the intention of the testator."

It is apparent that by enacting this section in 1849, the Wisconsin legislature, as a matter of public policy, intended to modify the common law so as to permit a testator to pass an interest in land even though acquired after the making of his will.

Did George Zink in his will demonstrate an intention to pass after-acquired real estate? In our opinion he did. After making some specific bequests the residue of his estate was disposed of by using the following terminology:

"All the rest, residue, and remainder of my estate, both real, personal, and mixed, and wheresoever situate, I do give and bequeath in the following manner . . ."

We believe that this disposition effectively shows an intention on the part of George Zink to include after-acquired

real estate. It meets the standard set down in Restatement, 3 Property, p. 1233, sec. 244 *g*:

". . . any disposition which gives 'all my property' or employs other words of substantially similar meaning, is construed to make a disposition in accordance with, and subject to modification by, any events which increase or decrease his assets and which occur subsequent to the execution of the will and before the death of the testator."

This court has frequently expressed itself in favor of a presumption against intestacy, particularly where a residuary clause is involved. *Will of Nielsen* (1950), 256 Wis. 521, 527, 41 N. W. (2d) 369. To the same effect is *Estate of Britt* (1946), 249 Wis. 30, 34, 23 N. W. (2d) 498, where the court said:

"The presumption of the law is against an intended intestacy as to any part of an estate because the will indicates a contrary general intention. This presumption is strengthened by the presence of a residuary clause, one obvious purpose of which is to preclude the occurrence of intestacies by unforeseen contingencies."

We do not regard the case of *Will of Smith* (1922), 176 Wis. 494, 186 N. W. 180, as resolving the question under consideration. The residuary clause in that will incorporated the word "expectancy," and the court's conclusion that after-acquired realty passed thereunder does not resolve the question in the case at bar. But cf. 1960 Wisconsin Law Review, 345, 347.

Several other states with statutes comparable to that of Wisconsin have reached the conclusion that a will with a residuary clause expresses the necessary intention to dispose of the testator's entire property whether acquired before or after the making of the will. *In re Little Joe* (1931), 165 Wash. 628, 5 Pac. (2d) 995; *Silverman v. Larson* (1927), 124 Kan. 267, 259 Pac. 707; *Whitney v. Whitney* (1916),

178 Iowa 117, 159 N. W. 657. But cf. *Bedell v. Fradenburgh* (1896), 65 Minn. 361, 68 N. W. 41; *Raines v. Barker* (1856), 54 Va. (13 Gratt.) 128, 67 Am. Dec. 762.

In our opinion the better-reasoned decisions sustain the position that where the will evidences an intention to dispose of all his property, whether it be contained in a residuary clause or in some other expression of the will, after-acquired realty does pass under such will.

*By the Court.*—Order affirmed.