ESTATE OF KUGLER: HEGNER, Administrator w.w.a., Appellant, v. STAUDENMAIER, Respondent.*

*No. 156.   Argued October 4, 1971.—Decided November 2, 1971.*
(Also reported in 190 N. W. 2d 883.)

---

* Motion for rehearing denied, with costs, on January 4, 1972.

For the appellant there were briefs and oral argument by *William A. Ketterer* of Milwaukee.

For the respondent there was a brief by *McKenzie, Hebbe, Downey & Kellogg, S. C.,* of Appleton, and oral argument by *John G. Kellogg.*

HANLEY, J.    Three issues are presented on this appeal:

(1) Does the one-fourth share of the residuary estate which has lapsed due to the death of the legatee before the death of the testatrix pass as intestate property;

(2) Does the will contain a latent ambiguity which would allow the admission of extrinsic evidence to explain the intention of the testatrix; and

(3) Where "one fourth" of the residuary estate is bequeathed to each of three specifically named legatees, does the lapsed share of a deceased legatee pass to the beneficiary whose share is described as "the balance?"

*Lapsed estate as intestate property.*

It is obvious that the lapsed share of the residuary estate cannot pass as intestate property, since the will specifically provides for the return of any lapsed legacies to the residuary of the estate—". . . I give, devise and bequeath all the rest, residue and remainder of my estate, *including any lapsed legacies,* . . . as follows: . . ." (Emphasis supplied.) It has been held that a lapsed share of the residue will pass as intestate property only if no contrary intent is expressed. *Estate of Mory* (1966), 29 Wis. 2d 557, 565, 139 N. W. 2d 623. This result is supported by the presumption that the testatrix intended to devise her property rather than create an intestacy. *Estate of Zink* (1962), 15 Wis. 2d 527, 533, 113 N. W. 2d 420.

*Admissibility of extrinsic evidence.*

The second question raised is whether extrinsic evidence is admissible to clarify the meaning of the word "balance" as used in the residuary clause. The residue of the estate was divided as follows:

One fourth to Mrs. Lawrence (Mary) Schmidt;
One fourth to Mrs. Frank (Ann) Van Rossum;
One fourth to Mrs. Eugene (Rose Mary) Koehn; and
"The balance" to three charities.

Appellant contends that this disposition contains a latent ambiguity which would make extrinsic evidence admissible to explain the testatrix's intent. The ambiguity is said to lie in the fact that it is impossible to determine who is entitled to the lapsed portion of the residuary estate: The share might pass by intestacy (a proposition already discussed and rejected) ; it might pass to the charities; or it might be divided equally among the surviving residuary legatees.

This court recognizes two classes of latent ambiguities: One, where there are two or more persons or things exactly measuring up to the description in the will; the other, where no person or thing exactly answers the declarations and descriptions of the will, but two or more persons or things answer the description imperfectly. Extrinsic evidence must be resorted to under these circumstances to identify which of the parties, unspecified with particularity in the will, was intended by the testator. *Estate of Gibbs* (1961), 14 Wis. 2d 490, 496, 111 N. W. 2d 413.

In the instant case there is no doubt as to the identity of either the parties or the property involved in this estate. The only question is the legal effect of the word "balance" when determining the appropriate share to be given to each of the clearly identified residuary legatees. There being no latent ambiguity as to the identity of the parties or the property, extrinsic evidence is inadmissible.

Appellant calls this court's attention to the well-established principle that the words used by the testatrix are to be considered in relation to the circumstances surrounding the testatrix at the time she executed the will. *Estate of Budd* (1960), 11 Wis. 2d 248, 255, 105 N. W. 2d 358. This proposition is used to urge this court to consider the notes made by the attorney who drafted the will as part of the surrounding circumstances. To so hold would require the trial court to hear the testimony of the attorney in every instance. This would be violative of the rule that the testimony of an attorney is inadmissible unless there is an ambiguity in the will. *Estate of Breese* (1959), 7 Wis. 2d 422, 429, 96 N. W. 2d 712.

*Disposition of lapsed legacy.*

Since extrinsic evidence cannot be admitted in this case, we must look to the words of the will itself to determine

the proper disposition of the lapsed portion of the residuary estate. Appellant contends that the "¼ - ¼ - ¼ - balance" terminology of the residuary clause clearly demonstrates the testatrix intended at the time of the execution of the will that the three charities should share one fourth of the residue of the estate. Plainly, that was the effect of the word "balance" when all residuary legatees were in existence. However, appellant further asserts that the word "balance" should still be held to indicate "one fourth," even after the death of one of the residuary legatees. We do not agree.

In *Estate of Rhodes* (1955), 271 Wis. 342, 345, 73 N. W. 2d 602, this court stated:

"It is presumed that every word of a will is used advisedly and with its ordinary meaning. It is the duty of the court first to read the will giving ordinary meaning to its words and, if this produces a plain result, that result must prevail and be taken to express the testator's intent. This principle, under varying circumstances, has been repeatedly declared by this court. . . ."

In general, the ordinary meaning of the word "balance" is "what is left;" it is equivalent to "remainder." *Will of Doerfler* (1937), 225 Wis. 418, 423, 273 N. W. 460. Applying this meaning to the will in question clearly indicates that the three charities should receive "what is left," or one half, after the two surviving residuary legatees each receive one fourth of the residuary estate.

Testatrix's failure to review her will, especially after the sale of her house and the death of one of the residuary legatees, results in the distribution of her estate in accordance with the intent she expressed at the time of execution of the will. The importance of a periodic review of an estate plan cannot be overstressed. The fact that the testatrix might have desired some other outcome cannot be considered by this court when interpreting the language of her will. As stated in 95 C. J. S., *Wills*, p. 795, sec. 599:

"Where the words when given their natural, ordinary, or popular meaning are plain and unambiguous, and show a clear intention on the part of the testator, they must be given that meaning notwithstanding their effect, and such meaning cannot be departed from for the purpose of giving effect to what it may be supposed was the intention of the testator, however beneficial that intention might have been. . . ."

We conclude that the order of the trial court construing the will must be affirmed.

*By the Court.*—Order affirmed.